Tammy A. Tsoumas (SBN 250487)
tammy.tsoumas@kirkland.com
Jonathan J. Faria (SBN 274019)
jonathan.faria@kirkland.com
Matthew Summers (SBN 311324)
matthew.summers@kirkland.com
Leonora A. Cohen (SBN 319463)
lena.cohen@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067
Telephone:   (310) 552-4200
Facsimile:   (310) 552-5900

Attorneys for Defendant
The Boeing Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEINTRAUB FINANCIAL SERVICES, INC.; and SEBITNA, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> THE BOEING COMPANY, <br><br> Defendant. | 2:20-cv-3484-MWF-GJS <br><br> Hon. Michael W. Fitzgerald <br><br> **DEFENDANT THE BOEING COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; MEMORANDUM IN SUPPORT THEREOF** <br><br> Date:          August 3, 2020 <br> Time:          10:00 a.m. <br> Courtroom:   5A |

# NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 3, 2020, at 10:00 a.m. in Courtroom 5A of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, Defendant The Boeing Company ("Boeing") will and hereby does move to dismiss Plaintiffs Weintraub Financial Services, Inc. and Sebitna, LLC's Second Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

Boeing's Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support of this Motion, Boeing's Request for Judicial Notice, all pleadings filed with this Court, any oral argument that may be presented at a hearing in this matter, and any other matters this Court wishes to consider.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on June 24, 2020.

DATED:  July 1, 2020

Respectfully submitted,

KIRKLAND & ELLIS LLP

_/s/ Tammy A. Tsoumas_

Tammy A. Tsoumas (SBN 250487)
tammy.tsoumas@kirkland.com
Jonathan J. Faria (SBN 274019)
jonathan.faria@kirkland.com
Matthew Summers (SBN 311324)
matthew.summers@kirkland.com
Leonora A. Cohen (SBN 319463)
lena.cohen@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067
Telephone:   (310) 552-4200
Facsimile:   (310) 552-5900

Attorneys for Defendant
The Boeing Company

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................ 1

II.  BACKGROUND ............................................................................................. 3

    A.   The Parties. ........................................................................................ 3

    B.   Boeing and the Water Board Investigated the Property in the 1990s, and Found No Further Action Was Required for Industrial Use. ..................................................................................................... 4

    C.   Plaintiffs Seek to Convert the Property to Residential Use and Discover That Butler May Have Contributed to Soil Contamination. .................................................................................... 4

    D.   Butler Contacts Boeing, Who Performs Another Thorough Assessment, and Reports Its Findings to the Water Board. ..................... 5

    E.   Boeing Presents Its Findings, and Its Proposed Remediation Plan, at a Meeting with Plaintiffs in April 2013. ................................. 6

    F.   The Water Board Agrees That Butler Is a Jointly Responsible Party. .................................................................................................. 7

    G.   Butler Refuses to Extend Escrow to Give Plaintiffs Additional Time to Secure Financing, and Plaintiffs Sue Him. ................................. 8

    H.   Plaintiffs Prevail on Theories Directly Contradicted by the SAC, and Receive a Settlement from Butler. ................................................ 9

    I.   Plaintiffs Sue Boeing in an Attempt to Obtain a Double Recovery Based on a Directly Contradictory Theory. ............................. 10

III. LEGAL STANDARD .................................................................................. 10

IV.  ARGUMENT ............................................................................................... 11

    A.   Plaintiffs Fail to Plausibly Allege Either of Their Claims for Interference with Prospective Economic Relations. ............................. 12

        1.   Plaintiffs Do Not Allege That Boeing Committed Any Independently Wrongful Act. ......................................... 12

**THE BOEING COMPANY'S MOTION TO DISMISS**

          2.    Plaintiffs Also Do Not Sufficiently Allege a
                Prospective Economic Relationship. ............................... 15

      B.    Plaintiffs Fail to Plausibly Allege the Intent Required for Their
            Intentional Interference Claims. ............................................... 16

      C.    Plaintiffs Also Fail to Identify Any Details of the Purported
            Breach. .......................................................................................... 18

      D.    Plaintiffs Are Judicially Estopped from Making the Only
            Assertions of Purported "Interference" That Appear in the SAC. ........... 19

      E.    Plaintiffs' Claims Are Premised on Immunized Petitioning
            Activity and Thus Are Barred by Regulatory Privilege. ........................ 21

V.    CONCLUSION ................................................................................. 25

**THE BOEING COMPANY'S MOTION TO DISMISS**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arista Record LLC v. Doe*,
   604 F.3d 110 (2d Cir. 2010) ................................................................. 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 10

*Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*,
   910 F.2d 1540 (7th Cir. 1990) ............................................................. 19

*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners*,
   52 Cal. App. 4th 867 (1997) ................................................................ 15

*BioResource, Inc. v. U.S. PharmaCo Distribution, Ltd.*,
   2010 WL 3853025 (N.D. Cal. Sept. 29, 2010) .................................... 12

*California Motor Transport Co. v. Trucking Unlimited*,
   404 U.S. 508 (1972) ............................................................................. 23

*Card v. Ralph Lauren Corp.*,
   2020 WL 353464 (N.D. Cal. Jan. 21, 2020) ....................................... 13

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*,
   944 F.2d 1525 (9th Cir. 1991) ............................................................. 24

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
   11 Cal. 4th 376 (1995) ................................................................. 12, 15

*Delphix Corp. v. Actifio, Inc.*,
   2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) ............................. 11, 14

*Dollar Tree Stores Inc. v. Toyama Partners, LLC*,
   2010 WL 1688583 (N.D. Cal. Apr. 26, 2010) .............................. 16, 17

*Dufresne v. JP Morgan Chase Bank, NA*,
   2019 WL 4318544 (E.D. Cal. Sept. 12, 2019) .................................... 11

*E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961) ............................................................................. 24

-iii-

**THE BOEING COMPANY'S MOTION TO DISMISS**

*ErgoCare, Inc. v. D.T. Davis Enterprises, Ltd.*,
  2013 WL 12246342 (C.D. Cal. Dec. 26, 2013)
  ..............................................................................13, 14, 16, 17

*Fabian v. Seto*,
  2015 WL 12683812 (C.D. Cal. Oct. 6, 2015) ........................................ 18

*Finato v. Keith Fink & Assocs.*,
  2017 WL 7202104 (C.D. Cal. Jan. 19, 2017)........................................ 15

*Gagne v. Zodiac Maritime Agencies, Ltd.*,
  274 F. Supp. 2d 1144 (S.D. Cal. 2003) ................................................ 21

*People ex rel. Gallegos v. Pac. Lumber Co.*,
  158 Cal. App. 4th 950 (2008)................................................................ 23

*Golden v. Sound Inpatient Physicians Med. Grp., Inc.*,
  93 F. Supp. 3d 1171 (E.D. Cal. 2015) .................................................. 13

*Hagberg v. California Federal Bank*,
  32 Cal. 4th 350 (2004) .......................................................................... 23

*Hills Trans. Co. v. Southwest*,
  266 Cal. App. 2d 702 (1968) .......................................................... 3, 22

*Hsu v. OZ Optics Ltd.*,
  211 F.R.D. 615 (N.D. Cal. 2002) ....................................... 12, 13, 16, 17

*Jewelry 47, Inc. v. Biegler*,
  2008 WL 4642903 (E.D. Cal. Oct. 16, 2008).................................. 15, 17

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003)....................................................... 12, 13, 14, 15

*Lee v. Fick*,
  135 Cal. App. 4th 89 (2005) ................................................................ 24

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997) ................................................................ 12

*Ludwig v. Superior Court*,
  37 Cal. App. 4th 8 (1995) .................................................................... 23

-iv-

**THE BOEING COMPANY'S MOTION TO DISMISS**

*Matossian v. Fahmie*,
   101 Cal. App. 3d 128 (1980) ...................................................................23

*Menzel v. Scholastic, Inc.*,
   2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ................................. 10, 14

*Muse Brands, LLC v. Gentil*,
   2015 WL 4572975 (N.D. Cal. July 29, 2015) .......................................... 12

*Name.Space, Inc. v. ICANN*,
   795 F.3d 1124 (9th Cir. 2015) .................................................................. 13

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)........................................................................... 19, 21

*Nexsales Corp. v. Salebuild, Inc.*,
   2012 WL 216260 (N.D. Cal. Jan. 24, 2012)............................................ 18

*Owens v. Kings Supermarket*,
   198 Cal. App. 3d 379 (1988) ...................................................................22

*Picton v. Anderson Union High Sch. Dist.*,
   50 Cal. App. 4th 726 (1996) ....................................................................23

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
   360 F. Supp. 3d 994 (N.D. Cal. 2018)..................................................... 13

*Quelimane Co. v. Stewart Title*,
   19 Cal. 4th 26 (1998) ............................................................................... 16

*Real Estate Investors v. Columbia Pictures*,
   508 U.S. 49 (1993)............................................................................. 23, 24

*Rissetto v. Plumbers and Steamfitters Local 343*,
   94 F.3d 597 (9th Cir. 1996) ............................................................... 19, 21

*Sosa v. Direct TV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ............................................................. 24, 25

*Super Chefs, Inc. v. Second Bite Foods, Inc.*,
   2015 WL 12914331 (C.D. Cal. Aug. 25, 2015) ...........................2, 12, 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).................................................................................. 11

**THE BOEING COMPANY'S MOTION TO DISMISS**

*Tichinin v. City of Morgan Hill*,
    177 Cal. App. 4th 1049 (2009) .................................................................. 24

*Tindell v. Murphy*,
    22 Cal. App. 5th 1239 (2018) .................................................................... 22

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ...................................... 10, 12, 18

*United Artists Corp. v. United Artist Studios LLC*,
    2019 WL 8221088 (C.D. Cal. Aug. 2, 2019) ........................................... 17

*United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*,
    766 F.3d 1002 (9th Cir. 2014) .................................................................. 18

*Wagner v. Prof'l Eng'rs in Cal. Gov't*,
    354 F.3d 1036 (9th Cir. 2004) .................................................................. 19

*Weaver v. Jordan*,
    64 Cal. 2d 235 (1966) .............................................................................. 23

*Williams v. TouchTunes Music Corp.*,
    2014 WL 12626340 (C.D. Cal. June 13, 2014) ....................................... 22

*Zef Sci., Inc. v. Shimadzu Sci. Instruments, Inc.*,
    2016 WL 1255787 (S.D. Cal. Mar. 31, 2016) ......................................... 13

**Statutes**

Cal. Civ. Proc. Code § 47(b) ................................................................ 22, 23

Cal. Civ. Proc. Code § 47(c) ....................................................................... 3

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................. 10, 11, 25

**THE BOEING COMPANY'S MOTION TO DISMISS**

## I.      INTRODUCTION

The Second Amended Complaint ("SAC") represents Plaintiffs' third attempt to state a claim against Boeing.  Yet, with each iteration, it only becomes clearer that Plaintiffs' theories fail as a matter of law.

Plaintiffs are shell companies for two real estate developers who allege that they contracted to purchase an old industrial site in Woodland Hills, California from non-party Butler Enterprises ("Butler") to build residential units on top of it.  In the First Amended Complaint ("FAC"), they contended that their plans were derailed when the Los Angeles Regional Water Quality Control Board ("Water Board") determined that Butler was jointly responsible, with Boeing, for remediating historical soil and groundwater impacts at the site.  Dkt. 1-2 ("FAC") ¶¶ 9-10, 15.  Plaintiffs sought to hold Boeing liable for reporting Butler to the Water Board as a jointly responsible party, allegedly "without evidentiary support."  *Id.* ¶ 9.

Apparently recognizing that this theory (i) did not state a claim, (ii) directly contradicted their position in their prior lawsuit against Butler, and (iii) was premised on immunized petitioning activity, Plaintiffs amended their complaint again.  Yet the SAC simply deletes the Water Board context altogether in the apparent hope that vagueness, and allegations made "on information and belief," will carry the day.  The SAC reduces the purported basis for Boeing's liability to essentially a single meeting on April 19, 2013, in the lead-up to the Water Board's determination that Butler was jointly responsible.  Plaintiffs now contend that Boeing should be liable for Butler's breach because, at this meeting, Boeing allegedly (i) asked Plaintiffs not to build residential units on an active industrial remediation site, (ii) presented evidence that Butler was jointly responsible for the soil and groundwater impacts, and (iii) accordingly, proposed that Butler and Boeing split the remediation costs.

Based on these allegations, Plaintiffs contend that Boeing should be held liable for intentional interference with contractual relations, and intentional and negligent interference with prospective business advantage.  Those allegations do not support

1

1  any of those claims for at least three reasons.

2      ***First***, Plaintiffs fail to plead sufficient facts to state any of their claims.  To state

3  claims premised on interference with prospective economic relations (Causes of Action

4  2 and 3), the defendant's actions must be *independently unlawful separate and apart*

5  *from the alleged interference*.  Yet none of the actions Plaintiffs identify is unlawful by

6  any measure.  There is nothing unlawful about identifying evidence of a party's joint

7  responsibility to remediate a property, reporting that evidence to a state regulator

8  (which the regulator agreed with), and trying to negotiate a cost-sharing agreement to

9  accomplish that remediation.  At best, Plaintiffs have alleged that Boeing did *lawful*

10 things with the secret hope that this would derail Plaintiffs' transaction.  Under well-

11 established case law, that is woefully insufficient—even if Boeing *had* such a

12 motivation (which it did not).  Nor do Plaintiffs base their claims on a prospective

13 economic relationship; they only identify an *existing contract*, for which they are

14 limited to the tort of intentional interference with contract (Cause of Action 1).

15     Regarding Cause of Action 1, Plaintiffs fail to plead facts showing that Boeing

16 even knew of the terms of Plaintiffs' contract, let alone facts to plausibly allege that

17 Boeing somehow knew that Butler would react to a cost-sharing proposal by breaching

18 unspecified provisions of this contract.  Indeed, Plaintiffs have not even identified what

19 provisions of the contract were breached, when, or in what manner.

20     ***Second***, Plaintiffs' claims also fail because their premise—that Boeing was

21 somehow wrong to suggest that Butler was jointly responsible, and to hold him

22 accountable—directly contradicts what Plaintiffs told the state court in their successful

23 fraud suit against Butler.  In that prior case, Plaintiffs defeated Butler's motion for

24 summary judgment by citing to the same evidence that Boeing presented to them at the

25 April 19, 2013 meeting.  Plaintiffs cited this evidence for the proposition that *Butler*

26 *lied* when he told them that (i) only Boeing was responsible for the soil and

27 groundwater impacts, and (ii) Boeing had said that it was solely responsible.  Yet

28 Plaintiffs take the exact opposite position in the SAC, and now contend that Boeing

actually *was* solely responsible, and that Boeing *did* claim that it was solely responsible.  Judicial estoppel prevents exactly that sort of gamesmanship by litigants.

**Finally**, Plaintiffs' claims remain barred by the *Noerr-Pennington* doctrine and Section 47(c) of the California Code of Civil Procedure.  As evident from the allegations deleted from the FAC, the only reason that Boeing would have had to meet with Plaintiffs in 2013 was because Boeing was involved in an active remediation overseen by the Water Board.  Boeing's gathering of evidence that Butler was jointly responsible and (according to Plaintiffs' allegations and judicially noticeable filings) its petitioning of the Water Board to hold him responsible are immunized petitioning activities.  This immunity extends to communications anticipating or related to that reporting to the Water Board, which is precisely what the April 19, 2013 discussion was.

For these reasons, the SAC should be dismissed with prejudice.

## II.    BACKGROUND[1]

### A.    The Parties.

Plaintiffs are shell companies for Richard and Liane Weintraub, two real-estate moguls based in Los Angeles.  The SAC alleges that Plaintiffs unsuccessfully attempted to purchase 21200 Victory Boulevard in Woodland Hills, California (the "Property") from non-party Butler at some unspecified time for $21.5 million.  SAC

---

[1] In response to the Rule 7-3 meet and confer regarding the FAC, Plaintiffs agreed to amend rather than face a motion.  Dkt. 16.  But rather than concede the deficiencies of their claims, Plaintiffs simply struck the admissions that demonstrated the fatal flaws in their claims.  *See* Appendix A.  But Plaintiffs cannot simply remove prior admissions and hope that providing no context for their allegations will allow them to sail through a motion to dismiss.  *Hills Trans. Co. v. Southwest*, 266 Cal. App. 2d 702, 713 (1968) (A "pleader may not attempt to breathe life into a complaint by omitting relevant facts which made his previous complaint defective.").  Nor, as addressed in detail below, can Plaintiffs escape the representations they previously made to the state court in their lawsuit against Butler.  *See infra* Section IV.D.  Accordingly, the summary below cites to all three forms of admissions: those in the SAC, those in the FAC, and those that Plaintiffs made to the state court in the related proceeding.

3

¶¶ 7–8.  The Property was zoned for industrial use, and had housed a facility called Catalina Yachts, founded by Frank Butler, since 1974.  *Id.* ¶¶ 7, 10, 46.

Butler Enterprises is not owned by, or affiliated with, Boeing.  Boeing was not a party to Plaintiffs' real estate purchase contract with Butler.  *Id.* ¶ 36.  It has no contractual relationship with Butler or Plaintiffs, and has no financial interest in the Property whatsoever.  Boeing is the successor-in-interest to Rocketdyne, a division of North American Aviation that occupied the Property—before it was purchased by Butler—from approximately the mid-1960s to 1974.  SAC ¶¶ 7, 46; RJN,[2] Ex. N (Phase II Report) at 5.  During that time, Rocketdyne designed and built rocket engines for NASA and the Department of Defense.  *Id.*

## B. Boeing and the Water Board Investigated the Property in the 1990s, and Found No Further Action Was Required for Industrial Use.

As the SAC obliquely references, Boeing had already done a thorough, public investigation of the Property, overseen by the Water Board, decades before Plaintiffs' dealings with Butler.[3]  In particular, in November 1996, Boeing conducted a detailed environmental assessment of the Property.[4]  Boeing's experts found traces of solvents such as TCE in the soil in areas that matched the footprint of an old Rocketdyne building from the 1960s—but nothing that was above the applicable regulatory limits *for industrial use*.  *Id.*  This was reported to the Water Board, and the Water Board's experts confirmed in a letter to Catalina Yachts and Boeing dated February 18, 1998 that no further action was required at the Property for the ongoing industrial uses.[5]

## C. Plaintiffs Seek to Convert the Property to Residential Use and Discover That Butler May Have Contributed to Soil Contamination.

Nearly a decade after the Water Board issued its No Further Action letter,

---

[2] All exhibits herein are attached to the concurrently-filed Request for Judicial Notice.
[3] SAC ¶ 23; *id.* ¶ 14 (referencing Boeing's investigation from 1996–1998).
[4] Ex. N at 5; *see also generally* SAC ¶ 14.
[5] Ex. K (No Further Action Letter).

Plaintiffs decided to buy the property to re-develop it for ***residential use***.[6]  To transform the Property for that use, it would have to be re-zoned, triggering many additional regulatory requirements.  To comply with them, Plaintiffs hired their own experts, who confirmed soil impacts on the Property, *and identified potential sources of those impacts from Butler/Catalina Yachts*.[7]  This is also obliquely referenced in the complaint.  SAC ¶ 12 (referring to "due diligence" that "included an environmental investigation.").  Plaintiffs' experts identified numerous potential sources of solvent impacts ***at areas of the Property where there is no evidence Rocketdyne had ever operated***, including Catalina Yachts' "[c]urrent solvent still at the southeast Building A exterior," "[t]wo current paint booths in the southeast quadrant of Building A," "[o]ne varnish are with a vent in Building A," and Catalina Yachts' "[h]azardous materials and hazardous waste storage areas[.]"  Ex. D at 1, 6; Ex. N at 7.

### D. Butler Contacts Boeing, Who Performs Another Thorough Assessment, and Reports Its Findings to the Water Board.

After this assessment from Plaintiffs' experts, Butler requested that Boeing perform additional environmental investigation and remediation work at the Property.  Ex. F (04/26/13 Letter).  Boeing investigated, and *confirmed* that Butler had contributed to soil contamination at the Property.  Ex. E (04/23/13 Email) at 1.  Boeing also found *additional* evidence that supported the conclusion that Butler/Catalina Yachts contributed to soil contamination at the Property.[8]

---

[6] SAC ¶ 10 (Plaintiffs were seeking to "change the permitted use of the property from industrial to residential.")

[7] Ex. A (*Butler* action complaint) ¶¶ 24-26; Ex. D (TOR Report) at 6.

[8] For example, the Los Angeles City Fire Department complained to the Hazardous Materials Control Program ("HMCP") about numerous spontaneous dumpster fires caused by resin waste being dumped into the trash by Catalina Yachts.  Ex. E; Ex. A ¶ 30.  Interview memoranda from an HMCP industry survey stated that TCE was used as a solvent to remove wax from yacht hulls until May of 1990.  *Id.*  These documents are included in the set of documents ambiguously referenced by Plaintiffs as "documents produced by Boeing."  SAC ¶ 14.

### E. Boeing Presents Its Findings, and Its Proposed Remediation Plan, at a Meeting with Plaintiffs in April 2013.

The FAC tellingly made no mention of an April 19, 2013 meeting at all. *See generally* FAC. For the first time in the SAC, Plaintiffs allege that Boeing attended a meeting with Plaintiffs on that date, and that Boeing (i) asked Plaintiffs not to build residential units on an active industrial remediation site, and (ii) somehow improperly "changed its position" regarding responsibility for the Property. SAC ¶ 22.

In reality, Mr. Weintraub submitted a sworn declaration to the state court presiding over Plaintiffs' suit with Butler (*infra* Section II.H) addressing this very meeting. Ex. C (Weintraub Decl.). He attests that, at this meeting (which Butler did not attend), Boeing told Plaintiffs that it "had found documents evidencing that Catalina Yachts in fact had improper environmental managements practices, that Catalina Yachts used TCE in its operations, and that Catalina Yachts' practices potentially caused contamination of the Property, including TCE contamination." *Id.* ¶ 16. He also confirmed Boeing sent him those documents by e-mail. *Id.*; Ex. E.

Mr. Weintraub then attests that when he later confronted Butler with Boeing's evidence, Butler eventually confessed, saying that "he knew of such contamination but that [Plaintiffs] could never prove it," and that "he was worried that Catalina's operations may have been a source of TCE contamination because he was aware that there has been a chemical spill of TCE that went into a foundation crack in the production area of one of the [Catalina Yachts] buildings." *Id.* ¶ 18. Boeing's documents (Ex. E), and Weintraub's sworn statements, dispose of any suggestion in the SAC that Boeing's "position" regarding Butler's contribution to the soil impacts was "without sufficient evidentiary support." SAC ¶¶ 26, 30, 53. The same documents (Ex. E) were later jointly filed with the Water Board by Butler and Boeing on February 21, 2014. Ex. N at 27-37.

Mr. Weintraub's declaration also refers to, and attaches, a remediation cost-sharing proposal made after that meeting that, among other things, *Catalina Yachts*

(*i.e.*, Butler, not Plaintiffs) deposit $5 million into an escrow account "to be used towards remedial efforts related to *Catalina Yachts' responsibility*." Ex. C ¶ 17 (emphasis added); Ex. F.  This is the escrow term referred to in the SAC.  SAC ¶¶ 27, 53.  As this document makes clear, Butler had requested that Boeing "perform certain environmental investigation and remediation work at the site," and Boeing responded with a set of *proposed* terms for an agreement between Boeing and Butler on how to share the costs of that effort—given Butler's admitted partial responsibility, and the possibility that additional soil impacts could be discovered.  Ex. F at 1.  This included a proposed cost split and a proposal to use an escrow account to handle the funds, given that Butler would be leaving the property and the future of Butler's company could not be assured.  *Id.*  The letter then invited a discussion of the proposal.  *Id.*  The parties ultimately could not reach an agreement, and the Water Board maintained Boeing's responsibility for the former Rocketdyne degreaser area of the site, and held Catalina Yachts responsible for its portions of the site.[9]

This record disposes of any suggestion in the SAC (i) that Boeing was "refus[ing] to accept responsibility for remediating the degreaser pits" (SAC ¶ 19); (ii) that the proposal somehow applied to Plaintiffs (*id*. ¶ 30); or (iii) that the proposal was anything other than an attempt to find a mutually acceptable cost-sharing agreement.

### F.    The Water Board Agrees That Butler Is a Jointly Responsible Party.

On August 14, 2013, the Water Board sent a letter to Butler regarding its oversight of the Site Cleanup Program for the Property.  Ex. L; FAC ¶ 37; SAC ¶ 50.  The Water Board concluded that Butler was a responsible party for expenses incurred overseeing the investigation and remediation of the Property.  *Id*. at 1; FAC ¶¶ 36, 40.

---

[9] *See* Ex. M (Boeing's remediation plan); Ex. O (Letter from Water Board to Butler); Ex. P (Butler's remediation plan).  The Water Board recently notified the public that it has made a No Further Action determination *again* based on Boeing's remediation of the degreaser areas since 2013.  *See* Exs. Q-R.

### G.    Butler Refuses to Extend Escrow to Give Plaintiffs Additional Time to Secure Financing, and Plaintiffs Sue Him.

Approximately one month before escrow was scheduled to close on the transaction between Plaintiffs and Butler, Plaintiffs informed Butler that the "environmental issues" attributable to Catalina Yachts had "become an impediment to the financing for the transaction," but they nevertheless wanted to try to "save" it. Ex. G (05/09/13 letter); *see also* SAC ¶ 30.  Plaintiffs thus requested "an additional six month extension of the closing date of the transaction."  *Id*.  Butler and Plaintiffs attempted but failed to negotiate an extension of the escrow period, and the escrow terminated without completion of the Purchase.  Ex. C ¶¶ 20–25; *see* SAC ¶ 25.

Following Butler's refusal to extend escrow, Plaintiffs sued him and a number of associated entities (the "Butler Defendants") for fraud, negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing, among other claims (the "*Butler* Action").  *See* Ex. A.  In that lawsuit, Plaintiffs represented to the state court that the deal fell through because (i) *Butler* falsely represented the source and extent of chemical contamination of the Property by maintaining that Butler had no responsibility for such contamination, and (ii) *Butler* fraudulently concealed information evidencing otherwise (namely, the evidence that Boeing shared with Plaintiffs at the April 19, 2013 meeting).  *See id.*; Ex. C ¶¶ 9, 12, 27; Ex. B (Pl. Opp. to Mot. for Summary Judgment) at 6–9, 12–18.

Indeed, the premise of virtually Plaintiffs' entire case against Butler was their representation that, contrary to the allegations in the SAC here, Catalina Yachts *shared responsibility with Boeing* for the soil contamination on the Property, and that *Butler had lied* when he suggested otherwise.  For example:

- Ex. A ¶ 42:  Alleging that Butler "*misrepresented* to Plaintiffs that the finding of any involvement of Catalina Yachts as a potential source of any contamination . . . was a mistake."

- Ex. B at 6:  "Plaintiff not only complains of the existence of contamination on

8

the property, *but who caused it* . . . [Butler] repeatedly and falsely represented that [Butler] could not be the source of the contamination, and instead, the contamination was caused by [Rocketdyne]" (emphasis in original).

- *Id.* at 10:  Butler "repeatedly asserted that Rocketdyne (and therefore Boeing) was responsible for any contamination, and disclaimed any possibility that contamination was caused by Catalina Yachts . . . . However, this too was false"

*See also* Ex. A ¶¶ 30–33, 43–51, 66–72; Ex. C ¶ 16–18, Ex. D; Ex. H (Order) at 5–6. Even more egregious, the evidence Plaintiffs relied upon to prove that Butler's representations were false was the evidence *Boeing* presented to them at the April 19, 2013 meeting.[10]  Plaintiffs relied heavily on *Boeing's* evidence in their complaint and summary judgment briefing, along with evidence that Boeing never actually said it would take sole responsibility for impacts caused by Catalina Yachts.[11]

## H.   Plaintiffs Prevail on Theories Directly Contradicted by the SAC, and Receive a Settlement from Butler.

The state court ultimately credited these representations, and Plaintiffs prevailed by defeating the Butler Defendants' motion for summary judgment.  Ex. H.  While Plaintiffs' motion for fees was pending, and the parties were in the midst of briefing their motions *in limine* for trial, Plaintiffs and the Butler Defendants settled for an undisclosed amount.  *See* Ex. J (Docket); Ex. I (Dismissal).

---

[10] *See e.g.*, Ex. A ¶ 46 ("Boeing's agents informed Messrs. Weintraub and O'Brien and presented documentary evidence that, despite the representations made [by Butler in the contract], Catalina Yachts had used TCE on the Property from the 1970s until 1990, improperly disposed of other contaminants, and has been investigated by various governmental bodies[.]"); *id* ¶ 30 ("At this meeting [with Boeing], Plaintiffs were told and shown documents evidencing that Catalina Yachts potentially caused contamination of the Property, including TCE contamination.")

[11] *See* Ex. B at 15–16 ("Boeing repeatedly asserted that it is only responsible for a *particular section* of the Property, not the remaining areas, and specifically not the area operated by Catalina Yachts.") (emphasis in original).

## I. Plaintiffs Sue Boeing in an Attempt to Obtain a Double Recovery Based on a Directly Contradictory Theory.

Approximately one year after Plaintiffs settled their lawsuit against Butler, Plaintiffs filed the instant action.  Dkt. 1-1.  In May 2019, they filed a form complaint devoid of any facts.  *See id.*  Plaintiffs were ordered to file an amended complaint by July 5, 2019 (Dkt. 1-6), which they failed to file until more than eight months later, on March 16, 2020.  The FAC identified only Boeing as a defendant (Dkt. 1-2), and this case was removed to this Court on April 15, 2020 (Dkt. 1).

In accordance with Local Rule 7-3, Boeing met and conferred with Plaintiffs, and outlined in detail why the FAC failed to plead each of its claims, was barred by judicial estoppel, and was barred by regulatory privileges.  Rather than face a motion, Plaintiffs filed the SAC on June 5, 2020.  Dkt. 19.  As discussed in detail below, the SAC corrects none of the deficiencies of the original.  Plaintiffs simply deleted the Water Board context of their allegations.  This context shows that Boeing was trying to reach an agreement on what ultimately became the Water Board-approved remediation plan, which held both Boeing and Butler responsible for the remediation costs at the site.  Appendix A.  The remainder of the SAC consists principally of conclusory allegations and rank speculation made on "information and belief" (*e.g.*, SAC ¶¶ 17, 26–28), principally focused on the April 19, 2013 meeting addressed above.  The SAC also remains premised on the exact opposite theory to what Plaintiffs presented to the state court, namely that Boeing was somehow wrong to say that Butler was also jointly responsible, and to seek financial contribution on that basis.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it either lacks a "cognizable legal theory" or fails to "contain sufficient factual matter . . . to state a claim."  *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015) (citations omitted).  "[T]he doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions,"

which should be disregarded along with unwarranted deductions and inferences.
*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Critically, making allegations "on
information and belief" does "not mean that conclusory allegations are permitted."
*Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018).
Rather, "[a]n allegation made on information and belief must still be 'based on factual
information that makes the inference of culpability plausible.'"  *Id.* (citing *Arista
Record LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)); *see also Dufresne v. JP
Morgan Chase Bank, NA*, 2019 WL 4318544, at *6 (E.D. Cal. Sept. 12, 2019)
(allegations on information and belief were insufficient to sustain the complaint
"because they [were] based on speculation" and were contradicted by judicially
noticeable public records).[12]

　　While courts generally look to the face of a complaint when deciding a Rule
12(b)(6) motion, a court "must" also consider  "documents incorporated into the
complaint by reference, and matters of which a court may take judicial notice."
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[13]

## IV.   ARGUMENT

　　Plaintiffs' SAC should be dismissed on three independent grounds: (i) none of
the claims it presents is adequately pled; (ii) Plaintiffs are judicially estopped from
asserting the claims because they are incompatible with Plaintiffs' contentions in the
*Butler* Action; and (iii) the claims are barred by regulatory privilege.  Each of these
grounds is sufficient, in and of itself, for the Court to dismiss the SAC.

---

[12] *See also Delphix Corp. v. Actifio, Inc.*, 2014 WL 4628490, at *1-2 (N.D. Cal. Mar.
19, 2014) (emphasizing that pleading allegations under "information and belief" does
not relieve the plaintiff of its Rule 11 obligations, and noting that "[w]here, as here,
some of the allegations are qualified with the phrase and others are not, a reasonable
inference arises that it is intended as a caveat, to provide additional protection should
plaintiff be unable to prove any of the factual allegations.  It thus creates a further
inference that plaintiff likely lacks knowledge of underlying facts to support the
assertion, and is instead engaging in speculation to an undue degree.").

[13] *See also* Request for Judicial Notice filed concurrently herewith.

### A.  Plaintiffs Fail to Plausibly Allege Either of Their Claims for Interference with Prospective Economic Relations.

Plaintiffs' claims premised on interference with prospective economic relations (Causes of Action 2 and 3) fail to plausibly allege at least two required elements of those claims:  (i) that Boeing committed an "independently wrongful act"; and (ii) that there was interference with an identified prospective economic relationship, as opposed to an existing contract (which is the subject of the tort of intentional interference with contractual relations, Cause of Action 1).  Each defect is sufficient, in and of itself, to dismiss these claims.

### 1.  Plaintiffs Do Not Allege That Boeing Committed Any Independently Wrongful Act.

In order to state a cognizable claim of either intentional or negligent interference with prospective economic relations, Plaintiffs must "prove, as an element of the cause of action itself, that the defendant's conduct was *independently wrongful.*"  *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392 (1995)) (emphasis added).[14]  "An act is not independently wrongful merely because the defendant acted with an improper motive." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003).  Rather, the act constituting the interference must be "unlawful," that is, "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Id.* at 1159.  Accordingly, it is Plaintiffs' obligation to plead the independently wrongful act such that it would be cognizable as a separate cause of action.  *UMG Recordings*, 117 F. Supp. 3d at 1117 (dismissing claim where plaintiff

---

[14] *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 342 (1997) ("[T]he plaintiff must allege the conduct constituting the interference was itself wrongful by some other measure beyond the fact it amounted to interference.  It is insufficient to allege the defendant engaged in tortious conduct distinct from or only tangentially related to the conduct constituting the actual interference."); *Muse Brands, LLC v. Gentil*, 2015 WL 4572975, at *7 (N.D. Cal. July 29, 2015) ("The independently wrongful conduct must proximately cause the interference.").

1   did not plead the alleged independently wrongful act sufficiently to survive as a

2   separate cause of action); *Korea Supply*, 29 Cal. 4th at 1159 (explaining that the

3   interference must entail "independently actionable conduct").[15]

4   　　Where this element is missing, courts routinely dismiss claims for interference

5   with prospective economic relations.  *E.g.*, *id.*; *Hsu*, 211 F.R.D. at 620–21 (dismissing

6   plaintiff's claims of intentional and negligent interference with prospective economic

7   relationship because the plaintiff failed to plead an independently wrongful act);

8   *Name.Space, Inc. v. ICANN*, 795 F.3d 1124, 1134 (9th Cir. 2015) ("[T]he failure to

9   sufficiently allege a wrongful act outside of the interference itself forecloses an

10  interference with prospective economic advantage claim.").[16]

11  　　For example, in *ErgoCare, Inc. v. D.T. Davis Enterprises, Ltd.*, the plaintiffs

12  were distributors of defendant's healthcare products.  2013 WL 12246342, at *1 (C.D.

13  Cal. Dec. 26, 2013).  The plaintiffs alleged that when they refused to agree to

14  defendant's new contractual terms, the defendant sent false information to their clients,

15  such as that the plaintiffs were going out of business and false contact information.  *Id.*

16  at *8.  Regardless, the court dismissed the plaintiffs' claim because they had failed to

17  allege independently wrongful conduct.  *Id.*  In so finding, the court stressed California

18  Supreme Court precedent that "the tort of intentional interference with prospective

---

[15] *Super Chefs, Inc. v. Second Bite Foods, Inc.*, 2015 WL 12914331, at *5 (C.D. Cal. Aug. 25, 2015) (finding the plaintiff failed to plead an independently wrongful act where it did not state a separately cognizable claim for the purported wrongful act, fraud); *BioResource, Inc. v. U.S. PharmaCo Distribution, Ltd.*, 2010 WL 3853025, at *3 (N.D. Cal. Sept. 29, 2010) (same); *LiMandri*, 52 Cal. App. 4th at 341 (same).

[16] *Super Chefs, Inc.*, 2015 WL 12914331, at *5 (dismissing claim where plaintiff did not adequately plead an independently wrongful act); *Zef Sci., Inc. v. Shimadzu Sci. Instruments, Inc.*, 2016 WL 1255787, at *5-6 (S.D. Cal. Mar. 31, 2016) (dismissing claim where only "independent[ly] wrongful conduct" alleged was insufficient antitrust claim); *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.,* 360 F. Supp. 3d 994, 1016 (N.D. Cal. 2018) (same with fraud claim); *Golden v. Sound Inpatient Physicians Med. Grp., Inc.*, 93 F. Supp. 3d 1171, 1178 (E.D. Cal. 2015) ("Plaintiff has not alleged that Defendant's conduct was independently wrongful by a legal measure beyond the interference.").

economic advantage 'is not intended to punish individuals or commercial entities for
their choice of commercial relationships or their pursuit of commercial objectives.'"
*Id.* (quoting *Korea Supply Co.*, 29 Cal. 4th at 1158–59).[17]   The court then noted that
"[w]hile Plaintiffs have alleged that [defendant] provided false information to their
customers, they have not alleged that any of [defendant's] conduct was proscribed by
some determinable legal standard rather than being the product of an improper, but
lawful, purpose or motive."  *Id.*

         Here, the SAC likewise does not identify a single statute or law that proscribes
(i) requesting that Plaintiffs not build homes on an active industrial remediation site
(SAC ¶ 20), (ii) presenting evidence of another party's joint responsibility (SAC ¶ 22),
or (iii) trying to negotiate a cost-sharing agreement with that party (SAC ¶ 25).  Even if
Plaintiffs' rank speculation "on information and belief" were *correct* (it is not), and
that by doing these things Boeing was secretly hoping that Plaintiffs transaction would
be derailed (SAC ¶¶ 25–26),[18] Plaintiffs' claims still would fail.  As the authority
above makes clear, an *improper motive* does not render an act independently wrongful,
and "the act of interference with prospective economic advantage is not tortious in and
of itself."  *Korea Supply*, 29 Cal. 4th at 1159; *ErgoCare*, 2013 WL 12246342, at *8.
The *act itself* must be independently unlawful, and there is nothing unlawful about
seeking to minimize liability risk or costs (SAC ¶ 17).  Because Plaintiffs have not
(and cannot) plausibly allege that Boeing committed an independently unlawful act,

---

[17] *Card v. Ralph Lauren Corp.*, 2020 WL 353464, at *3 (N.D. Cal. Jan. 21, 2020)
("[A] claim for interference does not lie where a defendant seeks to advance its own
economic interests.")

[18] That Plaintiffs' allegations are entirely conclusory on this point is sufficient, in and
of itself, to dismiss their claims.  *See Menzel*, 2018 WL 1400386, at *2 ("An
allegation made on information and belief must still be 'based on factual information
that makes the inference of culpability plausible.'"); *Delphix Corp.*, 2014 WL
4628490, at *1–2 (N.D. Cal. Mar. 19, 2014) (where "allegations are qualified with the
phrase ["information and belief"] and others are not, a reasonable inference arises that
. . . plaintiff likely lacks knowledge of underlying facts to support the assertion, and is
instead engaging in speculation to an undue degree.").

Plaintiffs' claims for intentional and negligent interference with prospective economic relations must be dismissed.

## 2. Plaintiffs Also Do Not Sufficiently Allege a Prospective Economic Relationship.

The California Supreme Court has also emphasized "[t]he need to draw and enforce a sharpened distinction between claims for the tortious disruption of an *existing contract* and claims that a *prospective* contractual or economic relationship has been interfered with by the defendant," and urged courts to "firmly distinguish the two kinds of business contexts, bringing a greater solicitude to those relationships that have ripened into agreements." *Della Penna*, 11 Cal. 4th at 392 (emphasis in original). This distinction is important because "[e]conomic relationships short of contractual . . . should stand on different legal footing as far as the potential for tort liability is reckoned." *Id*. Where, as here, a complaint identifies only an *existing* contract, and does not plausibly allege a prospective economic relationship, the prospective economic relationship claims should be dismissed. *See e.g.*, *Finato v. Keith Fink & Assocs.*, 2017 WL 7202104, at *7 (C.D. Cal. Jan. 19, 2017) ("[B]ecause Defendants allegedly interfered with an *existing* Individual Settlement, Defendants did not interfere with *prospective* economic relations.") (emphasis in original).[19]

Here, the SAC fails to recognize this important distinction. The subject of the purported interference is an *existing* contract: a purchase agreement for $21.5 million between Plaintiffs and Butler with otherwise unspecified terms. SAC ¶¶ 54, 57, 66. Because Plaintiffs do not plausibly allege that Boeing interfered with any prospective economic relations, only an actual contract, those claims (Causes of Action 2 and 3) should be dismissed on this independent basis as well.

---

[19] *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners*, 52 Cal. App. 4th 867, 879 (1997) (a claim for intentional interference with contractual relations requires an underlying enforceable contract, whereas interference of a prospective relationship lies only where the underlying contract is unenforceable).

### B.    Plaintiffs Fail to Plausibly Allege the Intent Required for Their Intentional Interference Claims.

In order to satisfy the intent requirement for intentional interference with contractual or prospective economic relations, Plaintiffs also must plead facts showing that Boeing "knew that the interference was certain or substantially certain to occur as a result of its action."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003); *Jewelry 47, Inc. v. Biegler*, 2008 WL 4642903, at *3 (E.D. Cal. Oct. 16, 2008) (same) (citing *Quelimane Co. v. Stewart Title*, 19 Cal. 4th 26, 77 (1998)).  If a third party does not have the purpose of causing the breach, or its acts are not designed to disrupt the economic relationship, its "conduct does not subject [it] to liability under this rule *even if it has the unintended effect of deterring the third person from dealing with the other.*"  *ErgoCare*, 2013 WL 12246342, at *7 (citation omitted; emphasis in original); *Hsu*, 211 F.R.D. at 620.

For example, in *Dollar Tree Stores Inc. v. Toyama Partners, LLC*, a store operator alleged tortious interference claims against a lender that funded the plaintiff's landlord's redevelopment project.  2010 WL 1688583, at *2 (N.D. Cal. Apr. 26, 2010).  The plaintiff alleged that the lender knew that its loans would result in the landlord's breach of the plaintiff's lease, as the redevelopment would require the plaintiff to "disrupt its business operations" and make its "premises unusable." *Id*. at *3.  Nevertheless, the court dismissed the claim for failing to allege plausibly the requisite intent.  The court reasoned that simply funding a reconstruction project did not make it "substantially certain" that the landlord would breach the parties' original lease agreement, absent additional facts showing that the lender "intended to induce" the landlord to breach the agreement, and conclusory allegations otherwise could not save the plaintiff's claim.  *Id*.  Likewise, the court found that the plaintiff also failed to state a cognizable theory that the lender's withdrawal of funds interfered with the parties' amended lease agreement (a separate contract) because the lender "was acting with a legitimate business purpose." *Id*. at *4.

16

Plaintiffs' SAC is similarly devoid of any allegations that Boeing intended for Butler to breach the purchase agreement or disrupt its performance.  In fact, Plaintiffs fail to allege that Boeing—a stranger to the contract—even knew its terms.  For Plaintiffs' theory to make any sense, Plaintiffs would have to plead facts showing that Boeing (i) knew the terms of Plaintiffs' contract with Butler, and (ii) knew that if it sought to negotiate a cost-sharing agreement with Butler, he would choose to breach some terms of the contract with Plaintiffs—rather than the myriad of other possibilities, such as responding with a counter-proposal to Boeing's letter, agreeing to some other cost-sharing mechanism, proposing something short of escrow, agreeing to give Plaintiffs more time to secure financing, re-negotiating some of the terms of the agreement with Plaintiffs, and so on.  No facts are pleaded in the SAC that would plausibly establish how Boeing could have known any of those things.  *See Dollar Tree Stores*, 2010 WL 1688583, at *3.[20]

The best that Plaintiffs can muster is the vague allegation that they informed Boeing that they "intended to develop the property into residential units" (SAC ¶ 21), or that they informed Boeing about the terms of a subsequent offer *from some unidentified party* (not Butler) to sell the Property after it was developed.  *Id.*  As to their contract with Butler, Plaintiffs rest on conclusory allegations of Boeing's knowledge and intent, which cannot save their claim.  *See e.g.*, SAC ¶ 31 ("Boeing knew or should have known the disruption of the purchase was certain or substantially certain to occur."); ¶ 38 ("Defendants knew of Plaintiffs' contract."); ¶ 40 ("Defendants intended to disrupt the performance of Plaintiffs' contract.").  Accordingly, Plaintiffs' claims based on intentionality (Causes of Action 1 and 2) must

---

[20] *Hsu*, 211 F.R.D. at 620 ("An allegation [that "the defendant refused to perform under a contract and that this refusal had an adverse impact on the plaintiffs' business expectancies"] does not show that defendant's actions were designed to disrupt plaintiffs' business expectancies."); *ErgoCare*, 2013 WL 12246342, at *7 (dismissing an interference with contractual relations claim where plaintiff did not plausibly allege intent) (emphasis and citation omitted).

be dismissed on this basis as well.  *See Jewelry 47*, 2008 WL 4642903, at *3–4.

### C.    Plaintiffs Also Fail to Identify Any Details of the Purported Breach.

In order to plead a claim for intentional interference with contractual relations, Plaintiffs must, among other things, identify "the terms of the contracts that were specifically breached [and] how Plaintiff would have known about those contracts." *United Artists Corp. v. United Artist Studios LLC*, 2019 WL 8221088, at *5 (C.D. Cal. Aug. 2, 2019).[21]  These details reveal "what contractual rights [plaintiff] possessed," and are thus required "to understand whether [plaintiff's] performance was disrupted." *UMG Recordings*, 117 F. Supp. 3d at 1115 (quoting *United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1009 (9th Cir. 2014)) (dismissing the plaintiff's claim because the plaintiff did not allege the nature and extent of their contractual relationship with the third party, nor the third party's identity).

Here, the SAC is silent on the basic details of the contract and purported breach. No contract is attached to the SAC.  Plaintiffs do not identify with any meaningful detail the contract Boeing purportedly interfered with:  what the terms were, when they were breached, whether or how Boeing knew about them, and, most critically, which specific terms were breached (if any).  The SAC simply notes a $21.5 purchase agreement (¶ 8) and alludes to an escrow period (¶ 25), but is silent regarding any specific terms.  Indeed, the SAC is so vague and conflicting that it is impossible to discern whether Plaintiffs' claim is premised on a disruption or a breach of the agreement, and is a far cry from identifying *how* the contract was breached or disrupted, as required to state a claim.  *See e.g.*, SAC ¶ 67 ("The agreement to purchase the property was breached by Butler when he allowed the contamination question to

---

[21] *Nexsales Corp. v. Salebuild, Inc.*, 2012 WL 216260, at *4 (N.D. Cal. Jan. 24, 2012) (dismissing plaintiff's IICR claim because it did not identify "any terms of the contract, the parties involved, the terms of the contract that were breached, how Defendant would have known of the contract, and what harm was suffered by Plaintiff as a result of the breach"); *Fabian v. Seto*, 2015 WL 12683812, at *5 (C.D. Cal. Oct. 6, 2015) (same); *UMG Recordings*, 117 F. Supp. 3d at 1115 (same).

disrupt his relationship with Weintraub."); ¶ 25 ("Butler . . . cancelled the escrow and the deal was not closed."); ¶ 31 (describing the purchase as "disrupt[ed]").  Absent basic details about the contract and purported breaches, Plaintiffs claim for intentional interference with contract (Cause of Action 1) must be dismissed on this basis as well.

### D. Plaintiffs Are Judicially Estopped from Making the Only Assertions of Purported "Interference" That Appear in the SAC.

Even if Plaintiffs had articulated the required elements of their claims (they have not), their claims would *still* fail because they rest on allegations that are barred by the doctrine of judicial estoppel.

Judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996); *see also Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1547 (7th Cir. 1990) ("The principle [of judicial estoppel] is that if you prevail in Suit #1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events.").  It "applies to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion." *Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004).  It serves to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment," as Plaintiffs try to do here. *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (collecting cases). [22]

As noted above, Plaintiffs seek to hold Boeing liable for (i) contending that Butler was jointly responsible for soil and groundwater impacts at the Property, and/or (ii) seeking to hold Butler financial accountable for his joint responsibility for remediating those impacts. *Supra* at Section IV.A(1).  Each of those theories rests on

---

[22] Judicial estoppel is not limited to barring inconsistent positions in the same suit. *Rissetto*, 94 F.3d at 605. It also bars inconsistent positions taken by a party in *different* suits, which the Ninth Circuit finds are "much *harder* to justify" because facts have already been established. *Id*. (quoting *Astor*, 910 F.2d at 1548) (emphasis added).

the premise that Butler somehow *was not actually responsible* for soil impacts at the property, and thus any claim that Butler was also responsible was "without evidentiary support."  SAC ¶ 69; *see also id.* ¶ 26.  But Plaintiffs are judicially estopped from making that claim because they told the state court the *exact opposite*.

Indeed, Plaintiffs sued Butler on the theory that he committed fraud by failing to disclose that he was *also responsible*.  *Supra* at Section II.G.  To prove that Butler lied, Plaintiffs relied on evidence *provided by Boeing at the April 19, 2013 meeting they identify in the SAC*, and credited that evidence as true in its briefing and sworn declarations.  *Id.*; Ex. B.  This meeting is nearly the entire basis for the claims as alleged in the SAC.  SAC ¶¶ 18-22, 52, 65.  In the state court action, Plaintiffs submitted sworn declarations about what transpired.  *See, e.g.,* Ex. C.  Mr. Weintraub's declaration makes clear that, at this meeting (i) Boeing presented evidence that Butler was jointly responsible for soil and groundwater impacts at the Property, (ii) Boeing e-mailed that evidence to Plaintiffs, (iii) Plaintiffs confronted Butler with it, and (iv) Butler eventually *confessed* that Catalina Yacht's operations contributed to those soil and groundwater impacts.  *Supra* at Section II.E.  Accordingly, Plaintiffs cannot now contend that stating Butler was jointly responsible was "without sufficient evidentiary support."  *Id*.  Nor can they contradict their admission in state court that Boeing had never said it was solely responsible for the impacts at the site.  *Supra* at Section II.G; n.11.

Mr. Weintraub's declaration also makes clear that the proposed $5 million escrow account was just that (a proposal) made as part of a negotiation of a cost-sharing agreement with Butler given his joint responsibility.  Ex. C ¶ 17.  Boeing could not "demand" anything from the parties, since it was not a party to the contract.  All it could do was what Mr. Weintraub's declaration makes clear:  make a *proposal* as to how costs should be split, and see if Boeing and Butler could reach an agreement before the Water Board remediation plan was finalized.  *Supra* at Section II.E.  Butler and Boeing ultimately could not reach an agreement, and thus the Water Board held

each responsible for their portions of the site.  *Supra* at Section II.E-F.

Plaintiffs ultimately achieved significant success in the *Butler* action by persuading the state court to rely on their representations that Butler was also responsible for addressing the soil impacts.  For example, the court denied the Butler Defendants' motion for summary judgment on Plaintiffs' claims because:

> Plaintiff has submitted evidence that [the Butler Defendants] represented to plaintiff that there was contamination on the property but all contamination was done by Rocketdyne, that Boeing had accepted responsibility for cleaning up the entire property as successor to Rocketdyne, that plaintiff proceeded with the purchase of the property based on Boeing's acceptance of responsibility for the clean-up and expended money on obtaining entitlements for the property, that plaintiff was first informed of the contamination by Catalina Yachts by Boeing, that plaintiff confronted Frank Butler regarding the contamination, and that Butler admitted that Catalina Yachts had contaminated a portion of the property with TCE and had received notices of violation for incorrectly handling toxic materials.

Ex. H at 6.  The evidence referenced by the court included Mr. Weintraub's declaration and another of Plaintiffs' executives.

Plaintiffs were then able to leverage the court's denial summary judgment into a favorable settlement on the eve of trial.[23] *Supra* at Section II.H.  Having told the state court that Butler *was jointly responsible* for the soil impacts, and that Boeing had never claimed that Boeing was solely responsible, Plaintiffs cannot now take the opposite position.  Because Plaintiffs are judicially estopped from taking the position at the root of each of the alleged acts of interference in the SAC, each of their claims fails.

### E.    Plaintiffs' Claims Are Premised on Immunized Petitioning Activity and Thus Are Barred by Regulatory Privilege.

Finally, each of Plaintiffs' claims also fails because the acts for which they seek

---

[23] A "settlement is equivalent to winning a judgment for purposes of applying judicial estoppel."  *Rissetto*, 94 F.3d at 604–05; *New Hampshire*, 532 U.S. at 752 (holding, as to the second factor, that the success need only be "sufficiently favorable . . . to garner [the party's] approval.").

to impose liability on Boeing are immunized by the *Noerr-Pennington* doctrine and/or Section 47(b) of the California Code of Civil Procedure.

As noted above, the SAC seeks to hold Boeing liable because—at a meeting with Plaintiffs on April 19, 2013, or at some unspecified point around that time—Boeing allegedly (i) requested that Plaintiffs not build residential units on an active remediation site, (ii) presented evidence that Butler contributed to soil contamination at the Property, and (iii) proposed that Butler share the financial responsibility given that contribution. *Supra* at Sections II.E, IV.A(1). However, as evident from the context that Plaintiffs simply deleted from the FAC, Boeing only met with Plaintiffs because Boeing was engaged in an ongoing remediation at the Property supervised by the Water Board. *Supra* at Section II.E-F. As such, Boeing had to report periodically to the Water Board about how the remediation would and should proceed. *Supra* n.11. Plaintiffs cannot hide this essential context for the meeting by simply erasing it from their prior complaint as they have done.[24]

For example, in their SAC, Plaintiffs removed the following:

- Boeing "pointed the finger at Catalina Yachts" and "the [Water Board], thereafter, named Butler as a responsible party and ordered that Butler pay costs for investigation and remediation." FAC ¶ 15.

- Boeing "sought and obtained the [Water Board's] inclusion of Butler and Catalina Yachts in [the] cleanup." *Id*. ¶ 36; *see also Id*. ¶¶ 9, 10.

---

[24] California recognizes the sham pleading doctrine, which states that a "pleader may not attempt to breathe life into a complaint by omitting relevant facts which made his previous complaint defective." *Hills Trans. Co. v. Southwest*, 266 Cal. App. 2d 702, 713 (1968). The sham pleading doctrine "permits the court to take judicial notice of the prior pleadings and requires that the pleader explain the inconsistency." *Owens v. Kings Supermarket*, 198 Cal. App. 3d 379, 384 (1988). "Failure to provide such an explanation allows the court to … read into the amended complaint the allegations of the superseded complaint." *Tindell v. Murphy*, 22 Cal. App. 5th 1239, 1248 (2018). Federal courts applying California law have applied the sham pleading doctrine. *See*, *e.g.*, *Williams v. TouchTunes Music Corp.*, 2014 WL 12626340, at *4 (C.D. Cal. June 13, 2014), aff'd, 639 F. App'x 504 (9th Cir. 2016) (applying the sham pleading doctrine and disregarding inconsistent allegations in amended complaint).

- Boeing "sought and obtained Butler and Catalina Yachts as responsible part[ies] for costs and expenses for oversight and cleanup of the contaminants at [the property]." *Id.* ¶ 37.

- Boeing "failed to act with reasonable care when it represented that Butler was responsible for environmental release for his property" and requested "that Butler be named as a responsible party[.]" *Id.* ¶ 50.

In other words, the FAC made clear that Plaintiffs' grievance was with Boeing accurately reporting to the Water Board that Butler was a jointly responsible party, and Plaintiffs expressly alleged that this is why he walked away from the deal.  FAC ¶¶ 9-10, 15-16, 40.  The contemplated reporting to the Water Board that Plaintiffs identified in the FAC was the context for the April 19, 2013 meeting, and makes clear that the SAC still seeks to impose liability on Boeing for protected petitioning-related activity.

Indeed, under both California and federal law, civil liability cannot be imposed for petitioning the government.  *Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 21 (1995) (citing *Real Estate Investors v. Columbia Pictures*, 508 U.S. 49 (1993)).  In *California Motor Transport Co. v. Trucking Unlimited*, the Supreme Court confirmed immunity under the *Noerr-Pennington* doctrine extends to "the approach of citizens . . . to administrative agencies."  404 U.S. 508, 510 (1972).  "Certainly the right to petition extends to all departments of Government."  *Id.*; *People ex rel. Gallegos v. Pac. Lumber Co.*, 158 Cal. App. 4th 950, 964 (2008).  Where "administrative agencies . . . must make factual determinations 'the widest possible dissemination of information from diverse and antagonistic sources is essential to the welfare of the public.'"  *Matossian v. Fahmie*, 101 Cal. App. 3d 128, 135 (1980) (quoting *Weaver v. Jordan*, 64 Cal. 2d 235, 245 (1966)).[25]

---

[25] Section 47(b) of the California Code of Civil Procedure also provides a similar, absolute privilege that "bars all tort causes of action except a claim of malicious prosecution."  *Hagberg v. California Federal Bank*, 32 Cal. 4th 350, 360 (2004).  The statute likewise "has been interpreted to encompass those proceedings which resemble judicial and legislative proceedings, such as transactions of administrative boards and quasi-judicial and quasi-legislative proceedings."  *Picton v. Anderson Union High*

Critically, *Noerr-Pennington* immunity extends not only to the reporting to administrative agencies itself, but also to acts ***reasonably related to*** the petitioning activity.  "[N]on-petitioning conduct is within the protected 'breathing space' of the right of petition if that conduct is (1) incidental or reasonably related to an actual petition or actual litigation or to a claim that could ripen into a petition or litigation and (2) the petition, litigation, or claim is not a sham."  *Tichinin v. City of Morgan Hill*, 177 Cal. App. 4th 1049, 1068 (2009) (citing *Sosa v. Direct TV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006)).[26]

*Sosa* is instructive.  In that case, the Ninth Circuit extended *Noerr-Pennington* immunity to pre-litigation demand letters sent between private parties prior to the initiation of any litigation.  *Sosa*, 437 F.3d at 942.  The court first noted that, "[a]lthough the letters were not themselves petitions, the Petition Clause may nevertheless preclude burdening them so as to preserve the breathing space required for the effective exercise of the rights it protects."  *Id*. at 933.  Indeed, the "breathing space principle was recognized in *Noerr* itself, where the Court extended immunity not only to the railroads' direct communications with legislators but also to its public relations campaign."  *Id*. at 934 (citing *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 140–43 (1961)); *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1528–29 (9th Cir. 1991) (holding that "conduct

---

*Sch. Dist.*, 50 Cal. App. 4th 726, 737 (1996).  Private conduct sufficiently related to the petitioning activity is also privileged.  *See Lee v. Fick*, 135 Cal. App. 4th 89, 96–97 (2005) (holding that private meetings between parents related to a school board petition were privileged under Section 47(b)).

[26] Plaintiffs do not allege facts sufficient to show that Boeing's petitioning activities were somehow "a sham."  Nor could they, as Boeing was successful in petitioning the Water Board to oversee and regulate Butler and Catalina Yacht's investigation and cleanup of the Property.  *See Prof'l Real Estate Inv'rs, Inc.*, 508 U.S. at 58 (stating that the Supreme Court has "explicitly observed that a successful effort to influence governmental action . . . certainly cannot be characterized as a sham") (alteration in original).  Plaintiffs are also judicially estopped from claiming that it was inaccurate to suggest that Butler was partly responsible for the soil impacts.  *Supra* at Section IV.D.

incidental to the prosecution of the suit" is protected by *Noerr-Pennington*).  Thus, the court held that "communications between private parties are sufficiently within the protection of the Petition Clause to trigger the *Noerr-Pennington* doctrine, so long as they are sufficiently related to petitioning activity." *Id*. at 935.

Here, Boeing's alleged communications to Butler and Plaintiffs were all related to its petitioning activities to the Water Board regarding the investigation and cleanup of the Property.  *Supra* Section II.D-F.  Just like a pre-litigation demand letter, which "permits parties to frame their legal positions, often streamlining any subsequent litigation, and thereby reducing legal costs and facilitating access to the courts," *Sosa*, 437 F.3d  at 936, Boeing's communications framed its legal position that Butler was partly responsible for the environmental contamination of the Property.  *Supra* Section II.E.  After the meeting, the evidence discussed was jointly reported to the Water Board by Butler and Boeing.  *See* Ex. N at 27-37.  The Water Board then agreed that Butler was jointly responsible, and has since held Boeing and Butler responsible for their respective areas of the site.  *Supra* at Section II.F.

That Boeing sought a pre-filing agreement between Butler and Boeing regarding the allocation of remediation costs is likewise protected.  Indeed, pre-filing communications seeking to avoid making a petition to a state agency "more onerous" are also protected by the doctrine.  *Sosa*, 437 F.3d at 936.  Because Boeing's alleged communications to Butler and Plaintiffs in 2013 are related to its petitioning activities to the Water Board, they are also protected by the *Noerr-Pennington* doctrine.

## V.    CONCLUSION

For the foregoing reasons, the SAC should be dismissed with prejudice.

25

1    DATED:  July 1, 2020                    Respectfully submitted,

2                                            KIRKLAND & ELLIS LLP

3
                                             _/s/ Tammy A. Tsoumas_
4
                                             Tammy A. Tsoumas (SBN 250487)
5                                            tammy.tsoumas@kirkland.com
                                             Jonathan J. Faria (SBN 274019)
6                                            jonathan.faria@kirkland.com
                                             Matthew Summers (SBN 311324)
7                                            matthew.summers@kirkland.com
                                             Leonora A. Cohen (SBN 319463)
8                                            lena.cohen@kirkland.com
                                             KIRKLAND & ELLIS LLP
9                                            2049 Century Park East, Suite 3700
                                             Los Angeles, CA  90067
10                                           Telephone:   (310) 552-4200
                                             Facsimile:   (310) 552-5900
11

12

13                                           Attorneys for Defendant
                                             The Boeing Company
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28