Tammy A. Tsoumas (SBN 250487)
tammy.tsoumas@kirkland.com
Jonathan J. Faria (SBN 274019)
jonathan.faria@kirkland.com
Matthew Summers (SBN 311324)
matthew.summers@kirkland.com
Leonora A. Cohen (SBN 319463)
lena.cohen@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900

Attorneys for Defendant
The Boeing Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEINTRAUB FINANCIAL SERVICES, INC.; and SEBITNA, LLC, | CASE NO. 2:20-CV-3484-MWF-GJS |
| Plaintiffs, | Hon. Michael W. Fitzgerald |
| v. | **DEFENDANT THE BOEING COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| THE BOEING COMPANY, | |
| Defendant. | Hearing Date: August 3, 2020<br>Time: 10:00 a.m.<br>Courtroom: 5A |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .............................................................................................. 1

II.    ARGUMENT.................................................................................................... 3

    A.    Plaintiffs Admittedly Fail to State Claims for Interference With Prospective Economic Relations............................................................ 3

    B.    Plaintiffs Present No Plausible Allegations of the Intent Requirement for Their Intentional Interference Claims........................ 8

    C.    Plaintiffs Still Fail to Identify Any Details of the Purported Breach. . 11

    D.    Plaintiffs Are Judicially Estopped From Alleging Their Revised Theory of Their Case. .............................................................................. 12

    E.    Plaintiffs Fail to Show that Boeing's Conduct Falls Outside the Protection of the *Noerr-Pennington* Doctrine...................................... 14

    F.    Providing Plaintiffs With a Fourth Attempt to Plead a Cognizable Claim Would Be Futile. ........................................................................ 17

III.    CONCLUSION ............................................................................................. 18

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

4

**Cases**

*Allen v. City of Beverly Hills*,
5  911 F.2d 367 (9th Cir. 1990) ............................................................................. 6, 18

6

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
7  486 U.S. 492 (1988).......................................................................................... 16

8

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*,
9  166 F. Supp. 3d 988 (N.D. Cal. 2015)............................................................. 7

10

*Card v. Ralph Lauren Corp.*,
11  2018 WL 4108082 (N.D. Cal. Aug. 29, 2018) ............................................. 5

12

*Card v. Ralph Lauren Corp.*,
13  2020 WL 353464 (N.D. Cal. Jan. 21, 2020)...................................... 6, 18

14

*Carstens Chevrolet, Inc. v. Gen. Motors, LLC*,
15  2017 WL 2654903 (E.D. Cal. June 20, 2017) ......................................... 10

16

*Cisco Sys., Inc. v. STMicroelectronics, Inc.*,
17  2015 WL 3488923 (N.D. Cal. June 2, 2015)........................................ 11

18

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
  690 F.2d 1240 (9th Cir. 1982) ...................................................................... 17

19

*Damabeh v. 7-Eleven, Inc.*,
20  2013 WL 1915867 (N.D. Cal. May 8, 2013)....................................... 6, 8

21

*Dollar Tree Stores Inc. v. Toyama Partners, LLC*,
22  2010 WL 1688583 (N.D. Cal. Apr. 26, 2010)..................................... 10

23

*ErgoCare, Inc. v. D.T. Davis Enters., Ltd.*,
24  2013 WL 12246342 (C.D. Cal. Dec. 26, 2013).................................... 6

25

*Fisk v. Inslee*,
  759 Fed. App'x 632 (9th Cir. 2019) ........................................................ 7

26

27

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .................................................... 4, 6, 8, 11

28

*Leyba v. NV Energy, Inc.*,
    735 Fed. App'x 475 (9th Cir. 2018) ......................................................... 17

*Marchetti v. Superior Ct. of Cal.*,
    2016 WL 4658959 (N.D. Cal. Sept. 7, 2016) ............................................ 17

*Mendaros v. JPMorgan Chase Bank, Nat'l Ass'n*,
    2017 WL 2352143 (N.D. Cal. May 31, 2017) .......................................... 18

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ................................................................................... 17

*Rissetto v. Plumbers and Steamfitters Local 343*,
    94 F.3d 597 (9th Cir. 1996) ..................................................................... 14

*SIC Metals, Inc. v. Hyundai Steel Co.*,
    2020 WL 2527950 (C.D. Cal. March 3, 2020) .......................................... 10

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ................................................................... 16

*Thurston v. FCA US LLC*,
    2018 WL 700939 (C.D. Cal. Jan. 26, 2018) ............................................. 17

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) .................................................... 12

*United Artists Corp. v. United Artists Studios, LLC*,
    2019 WL 8221088 (C.D. Cal. Aug. 2, 2019) ...................................... 9, 11

*Unito Piazza Enters. Co. Ltd. v. PacWind, Inc.*,
    2009 WL 10700123 (C.D. Cal. June 1, 2009) ............................................ 8

*Vincent v. Trend Western Tech. Corp.*,
    828 F.2d 563 (9th Cir. 1987) ..................................................................... 6

**Statutes**

Cal. Civ. Code § 1709 ...................................................................................... 5

Cal. Civ. Proc. Code § 47(b) .......................................................................... 15

Cal. Civ. Proc. Code § 47(c) ............................................................................ 2

1    **I.    INTRODUCTION**

2           Plaintiffs' Opposition underscores why both the law and the facts are in

3    Boeing's favor and, therefore, why Boeing's motion should be granted.  Indeed,

4    Plaintiffs' Opposition does not even address, let alone dispute, virtually all of the

5    factual points that Boeing presented—whether those facts appear in the FAC, the

6    SAC, their statements to the state court in their prior lawsuit against Butler, or public

7    filings with the Water Board.  Plaintiffs also fail to address or distinguish virtually all

8    of the legal authority that Boeing cited.  Instead, Plaintiffs resort to a tactic they have

9    employed at least three times since the outset of this litigation:  when confronted with

10   the reality that their claims are legally and factually untenable, Plaintiffs simply

11   contend that their "real" claim is actually something other than what they have said.

12   That is surely not sufficient to save the SAC, Plaintiffs' *third attempt* to state a claim.

13   The SAC should be dismissed with prejudice for the reasons set forth in Boeing's

14   Motion and below.

15           ***First***, Plaintiffs' Opposition essentially admits that they have again failed to

16   plead sufficient facts to state their claims.  Regarding their claims for interference with

17   prospective economic relations, Plaintiffs *concede* that they failed to plead the required

18   element of independently wrongful conduct, but ask for leave to amend to "cite to a

19   code section or statute [purportedly] violated by Boeing."  Opp'n at 10.  But adding a

20   "code cite" would do nothing to change the reality that there is nothing remotely

21   unlawful about the *facts and conduct* alleged.  Plaintiffs continue to allege (at best) that

22   Boeing did *lawful* things—attempting to negotiate a cost-sharing agreement—with the

23   secret hope that this would derail Plaintiffs' transaction (and they do not even support

24   *that* notion with sufficient facts).  Under well-established case law, that is not

25   sufficient.  Nor is Plaintiffs' new contention that (contrary to the express allegations of

26   the SAC) the "real" prospective economic relationship they are alleging is not their

27   contract with Butler, but instead a vague, unspecified offer to resell the property to an

28

                                                    1

unidentified third party.  For either of these reasons, Plaintiffs' claims for interference with prospective economic relations fail.

Plaintiffs' Opposition also does nothing to meaningfully rebut the reality that: (i) Plaintiffs do not plead facts showing that Boeing even knew of the terms of Plaintiffs' contract with Butler, let alone that Boeing knew that Butler would respond by breaching some as-yet unspecified provisions of this contract; and, (ii) the SAC does not even identify the basic details of Butler's purported breach, including what provisions of the contract were breached, when, or in what manner.  This requires dismissal of Plaintiffs' intentional interference with contract claim as well.

***Second***, Plaintiffs' Opposition does not dispute, and actually confirms, that Plaintiffs' theory is directly contradicted by their prior representations in the *Butler* litigation.  Plaintiffs' Opposition now contends that their only remaining theories are that: (i) Boeing said it would not take responsibility for remediating the degreaser area of the site; and/or, (ii) that Boeing "demanded" $5 million or else it would not remediate that area.  Opp'n at 12-13.  Yet their representations to the state court said otherwise.  Plaintiffs told the state court in unequivocal terms that Boeing said it *would* take responsibility for the degreaser area; it just wanted Butler to also take responsibility for *other areas* for which he was responsible.  Exs. A-C.  Their filings and declarations then make clear that Boeing made a cost-sharing *proposal* to Butler to achieve that end—which invited further discussions if there was disagreement.  When the parties could not reach an agreement, the Water Board held Boeing liable for its portion, and Butler liable for his portion.  No "quid pro quo" was ever made, or could ever be made.

***Finally***, Plaintiffs fail to rebut that the *Noerr-Pennington* doctrine and Section 47(c) of the California Code of Civil Procedure also bar their claims.  Plaintiffs' Opposition confirms that their theories stem from statements Boeing made at the April 19, 2013 meeting with Plaintiffs.  Mot. at 22-25.  But they do not dispute that: (i) the evidence they allege was discussed at this meeting *was subsequently filed with the*

2

1   *Water Board* as part of the pre-remediation filings; and, (ii) the proposal discussed

2   expressly acknowledges that the context for the meeting was *contemplated remediation*

3   *activity overseen by the Water Board*. *Id*.  The meeting is thus clearly *incidental or*

4   *related* to a petition, and thus well within the scope of the doctrine.  *Noerr-Pennington*

5   protection is not, as Plaintiffs contend, somehow limited to the literal act of filing of a

6   petition alone.  Nor do Plaintiffs adequately explain how Boeing's petitioning to the

7   Water Board could be a "sham" when the Water Board reviewed and approved that

8   petition.

9       Ultimately, after years of prior litigation with Butler, another year since the

10  initial complaint was filed in this case, and *three different attempts* to state a claim, this

11  case remains what it was from the outset: an attempt to shoehorn a double recovery

12  from Boeing based on facts and legal theories that do not fit.  The Court should dismiss

13  the SAC with prejudice.

14  **II.    ARGUMENT**

15      **A.    Plaintiffs Admittedly Fail to State Claims for Interference With
            Prospective Economic Relations.**

16      As Boeing noted in its opening brief, Plaintiffs' interference with prospective

17  economic relations claims (Causes of Action 2 and 3) are fatally flawed in two

18  independent ways: Plaintiffs do not allege either that Boeing committed an

19  "independently wrongful act," or that the relationship Boeing purportedly interfered

20  with was prospective, rather than existing.  Mot. at 12-15.  Plaintiffs' Opposition

21  concedes the first point, and resorts to plainly misstating the SAC's allegations to

22  address the second.  Neither tactic can save their complaint.

23      **1.    Plaintiffs Concede That They Do Not Allege That Boeing
            Committed Any Independently Wrongful Act.**

24

25      Plaintiffs' Opposition admits that they have—for the third time (following two

26  meet and confers where Boeing informed Plaintiffs of this deficiency)—failed to

27  plead a basic, required element of their claims for interference with prospective

28  economic relations:  that Boeing committed an independently wrongful act.  Opp'n at

3

10.  Plaintiffs do not dispute that an independently wrongful act must be "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  Mot. at 12 (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003)).  Nor do they dispute clear California law that "[a]n act is not independently wrongful merely because the defendant acted with an improper motive" —which is (generously) the closest Plaintiffs come to articulating something Boeing did.  *Id.*  Instead, Plaintiffs contend that they should be given a *fourth* chance to plead their claims so they can simply "cite to a code section or statute [purportedly] violated by Boeing."  Opp'n at 10.  But "cit[ing] a code section or statute" plainly would not satisfy their pleading obligation.  Instead, Plaintiffs must plead *facts* plausibly alleging that Boeing did something unlawful.  Their Opposition proffers no such facts.

*First*, Plaintiffs contend that "Boeing's refusal to clean up the contaminated degreaser pits violates several regulatory standards and enforcement orders[.]"  *Id.* at 11.  What regulatory standards or orders those might be, Plaintiffs will tellingly not say.  That unsupported proffer thus does not justify leave to amend.  But even if Plaintiffs *had* any support for that assertion (they do not), Plaintiffs' own FAC in this case, prior lawsuit pleadings, and other judicially noticeable material, make clear that Boeing *never refused to "clean up" these degreaser pits*.  Mot. at 6-7, 19-25; *infra* at II.D.[1]

---

[1] As Plaintiffs alleged in the FAC in this Court, and the *Butler* litigation, Boeing actually sought to hold Butler *jointly* responsible for remediating the soil impacts at the site that his company caused.  Mot. at 19-25; Ex. C (Dkt. 21-3, Weintraub Decl.) ¶ 17 ("Boeing proposed that Boeing and Catalina Yachts *split the responsibility* of the environmental cleanup regarding the Property (with each party being responsible for the areas of contamination they likely cause, and then sharing costs regarding the remaining areas).") (emphasis added).

***Second***, Plaintiffs claim that these same facts somehow support a fraud claim under California Civil Code § 1709.[2]  Opp'n at 11.  To plead fraud, Plaintiffs must satisfy the heightened pleading standard of Rule 9(b), and state with particularity "(1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage."  *Card v. Ralph Lauren Corp.*, 2018 WL 4108082, at *4 (N.D. Cal. Aug. 29, 2018).  Plaintiffs do not (and cannot) explain how they can satisfy these elements, much less with Rule 9(b) specificity.  The best that Plaintiffs can muster is the assertion that "Boeing's demand for $5,000,000 in environmental funding was not based in reason, despite what it led the parties to believe."  Opp'n at 11.  But fraud is not based on one party's subjective assessment about what is "reasonable."[3]  The SAC scarcely identifies *any* representations Boeing made with particularity, let alone identifying something Boeing represented that was somehow false.  And Plaintiffs certainly cite no authority for the proposition that § 1709 prohibits (i) requesting that Plaintiffs not build homes on an active industrial remediation site (SAC ¶ 20), (ii) presenting evidence of another party's joint responsibility (*id*. ¶ 22), or (iii) trying to negotiate a cost-sharing agreement with that party (*id*. ¶ 25).  Plaintiffs thus fail to coherently argue, much less allege, a § 1709 fraud claim.[4]

---

[2] Plaintiffs erroneously refer to §1709 as a section of the California Code of Civil Procedure (Opp'n at 11), but Boeing assumes that they intended to refer to the Civil Code.

[3] Plaintiffs appear to alternatively contend they can base a § 1709 fraud claim on "Boeing's unlawful interjection of 'terms' into a private commercial sale for which it was not a party."  Opp'n at 12.  Boeing cannot divine how Plaintiffs contend this is fraud, but regardless, there is no way that Boeing could interject "terms" into an agreement to which it is not a party.

[4] Because Plaintiffs fail to identify any facts supporting a statutory violation, their claim that they can plead a claim under the UCL (Opp'n at 12) likewise fails.  *Card.*, 2018 WL 4108082, at *9 ("[W]here the same conduct alleged to be unfair under the UCL is also alleged to be a violation of another law, the UCL claim rises or falls with the other claims.").

It is well-settled that "the tort of intentional interference with prospective economic advantage 'is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives.'" *ErgoCare, Inc. v. D.T. Davis Enters., Ltd.*, 2013 WL 12246342, at *8 (C.D. Cal. Dec. 26, 2013) (quoting *Korea Supply Co.*, 29 Cal. 4th at 1158–59).[5] Yet that is exactly what Plaintiffs have attempted to do with their prospective economic relations claims from the outset of this litigation.

In sum, Plaintiffs fall well short of establishing that they could allege "independently actionable conduct" if provided with leave to amend. *Korea Supply Co.*, 29 Cal. 4th at 1159; *see also* Mot. at 12-13. Amendment of these claims is therefore futile, and leave should be denied. *See Damabeh v. 7-Eleven, Inc.*, 2013 WL 1915867, at *11 (N.D. Cal. May 8, 2013) (denying leave to amend where the plaintiff was unlikely to be able to make the factual showing necessary to cure the deficiencies in his interference with prospective economic advantage claims); *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (finding leave to be futile and that it was "implausible to suggest that justice somehow requires that [the plaintiff] . . . must be given a fourth attempt to locate a portion of the municipal code or state law" to support his claim). And "even if [the Court] believed [Plaintiffs'] arguments might not be futile" it should still deny leave to amend because Plaintiffs "present[] no new facts but only 'new theories' and 'provide[] no satisfactory explanation for [their] failure to fully develop [their] contentions originally.'" *Allen*, 911 F.2d at 374 (quoting *Vincent v. Trend Western Tech. Corp.*, 828 F.2d 563, 570–71 (9th Cir. 1987)); *see also infra* at II.F.[6]

---

[5] *Card v. Ralph Lauren Corp.*, 2020 WL 353464, at *3 (N.D. Cal. Jan. 21, 2020) ("[A] claim for interference does not lie where a defendant seeks to advance its own economic interests.").

[6] Plaintiffs later contend that leave to amend is particularly warranted here because their prior complaints were amended following the parties' stipulation, rather than the Court's order—a proposition for which they cite no authority. *See* Opp'n at 18. This

1

2          **2.    Plaintiffs Have Not Plausibly Alleged a Prospective Economic
                    Relationship.**

3          In its opening brief, Boeing also noted that Plaintiffs were impermissibly

4    basing their prospective economic relationship claims on an *existing* contract:  the

5    contract between Weintraub and Butler.  Mot. at 15.  That is literally what is alleged

6    in the SAC *verbatim* under the headings of Causes of Action 2 and 3.  *See* SAC ¶ 54

7    ("Boeing knew or should have known that its wrongful conduct would disrupt the

8    *economic relationship between Butler and Weintraub*."); *id*. ¶ 66 ("Boeing disrupted

9    the relationship *between Weintraub and Butler*.") (emphasis added).  Plaintiffs do not

10   dispute that these allegations appear in their SAC.  Plaintiffs also do not address, let

11   alone refute, any of the authority Boeing cited holding that this is yet another

12   independent basis to dismiss Plaintiffs' claims.  Mot. at 15.

13         Instead, Plaintiffs once again reinvent their allegations, and now contend that

14   (contrary to the express allegations above) "the prospective economic relationship that

15   Plaintiffs are pleading" is actually some unspecified offer that Plaintiffs allegedly had

16   to resell the property to a mysterious, unnamed third party.  Opp'n at 10.  As a

17   threshold matter, Plaintiffs "are necessarily bound by the allegations and claims in

18   their complaint," as is the Court.  *Fisk v. Inslee*, 759 Fed. App'x 632, 634 (9th Cir.

19   2019); *Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 994

20   (N.D. Cal. 2015) ("[I]n a motion to dismiss, the Court relies on the words in the

21   Complaint," not "Plaintiffs' attorney argument to the contrary.").  The SAC identifies

22   their contract with Butler as the economic relationship at issue in both claims, and

23   thus can be dismissed on this independent basis as well.

24         But even more fundamentally, even if the Court ignored that Plaintiffs' claims

25   are expressly pleaded as based on the contract with Butler, the unspecified economic

26   _____

27   is particularly unpersuasive here, since Plaintiffs did not even wait for the Court's
     order to concede the deficiency of their claims—and did not even attempt to excuse
28   their evident failure.  This belies Plaintiffs' insinuation that the Court would inform
     them of a failing that Boeing had not.

relationship with an unnamed "future purchaser of the Property," is *still* inadequately pleaded.  Opp'n at 10.  Plaintiffs "must," but do not, "identify *with particularity* the relationships or opportunities with which Defendant is alleged to have interfered," including specifically identifying the parties and the terms of the alleged prospective relationship.  *Damabeh*, 2013 WL 1915867, at *10 (emphasis added).  Otherwise, there is a "danger of speculative claims" in cases involving claims of interference with prospective economic relations.  *Id.*  Plaintiffs' allegations about an unspecified "letter of intent" from a "third party" (SAC ¶ 11) are too vague to determine if there is a cognizable prospective economic relationship, rather than a "hope" or, alternatively, a contract.  *Id.*; *see also Unito Piazza Enters. Co. Ltd. v. PacWind, Inc.*, 2009 WL 10700123, at *1 (C.D. Cal. June 1, 2009) ("A letter of intent can constitute a binding contract.").  As with their other claims, Plaintiffs fail to identify in any meaningful detail the purported other economic relationship with which Boeing is alleged to have interfered.

In sum, the Court should dismiss Causes of Action 2 and 3 because: (1) Plaintiffs do not allege that Boeing committed an "independently wrongful act" (they concede that they haven't done so); and/or, (2) Plaintiffs have failed to adequately allege a prospective economic relationship.

## B.    Plaintiffs Present No Plausible Allegations of the Intent Requirement for Their Intentional Interference Claims.

Boeing's Motion also outlined in detail why Plaintiffs' intent-based claims fail for not plausibly alleging facts establishing the intent standard required for their intent-based claims.  Mot. at 16-18.  Plaintiffs respond first by attempting to manufacture a dispute over the standard where none exists.  Opp'n at 6.  As Boeing noted in its opening brief, Plaintiffs must plead facts showing that Boeing "knew that the interference was certain or substantially certain to occur as a result of its action."  Mot. at 16 (quoting *Korea Supply Co.*, 29 Cal. 4th at 1153).  That is the standard Plaintiffs also cite, and the standard that is applied in each of the cases Boeing cited

8

that dismiss complaints for failing to plead facts that meet that standard.  *Id.* at 16–18. In fact, the only case that Plaintiffs cite for the standard *does exactly that*.  *See United Artists Corp. v. United Artists Studios, LLC*, 2019 WL 8221088, at *4 (C.D. Cal. Aug. 2, 2019).

Indeed, Plaintiffs' case is a perfect illustration of why their claims should be dismissed.  In *United Artists*, the defendants asserted a counterclaim for intentional interference with contract against the plaintiff, but the defendants "fail[ed] to identify any terms of the alleged contracts, the terms of the contracts that were specifically breached, or how Plaintiff would have known about those contracts."  *United Artists*, 2019 WL 8221088, at *5.  Accordingly, the Court found their claim "falls far short of what is required by *Twombly, Iqbal*, and relevant Ninth Circuit authority," and dismissed the claim without leave to amend.  *Id.*

The same is true here.  Plaintiffs do not dispute that there are no allegations in the SAC that Boeing knew the terms of their contract with Butler.  Their Opposition points only to four allegations:

1. "Plaintiffs requested confirmation from Boeing that Boeing would once again accept responsibility for cleaning up the degreaser pit on the site." Opp'n at 6 (citing SAC ¶ 15).  That says nothing about Boeing's knowledge of the contract terms.

2. "[O]n April 19, 2013, representatives from Weintraub, Boeing and Butler held a meeting at the site regarding purchase of the site and cleanup of the property.  At the meeting, Boeing inquired into the "development plans for the property, including the schedule of [the] sale, scope of the project, and plans for future environmental investigation."  *Id.* (citing SAC ¶¶ 18, 20). That also says nothing about Boeing's knowledge of the contract terms.

3. "Plaintiffs informed Boeing about the terms and conditions of the offer that was made to Plaintiffs."  *Id.* at 6-7 (citing SAC ¶ 21).  That says nothing about Plaintiff's contract *with Butler*, which is the only contract they

9

contend was breached.  *Id*. ¶¶ 25-26; Opp'n at 8-9.  It concerns the vague, unspecified offer Plaintiffs purportedly had to resell the property once they bought it from Butler.  *See supra* at Section II.A(2); SAC ¶ 21.

4.  "Plaintiffs allege that Boeing was informed at this meeting that Boeing's 'refusal to accept responsibility for remediating the degreaser pits was holding-up escrow.'"  Opp'n at 7 (citing SAC ¶ 19).  Even if that allegation were true (and not contradicted by Plaintiff's representations in a prior lawsuit), it again says nothing about Boeing knowing about the terms of Plaintiffs' contract with Butler.

As the authority Boeing cited makes clear, it is facially implausible for anyone to be certain or substantially certain that another party will breach a contract (the intent standard) *when they do not even know the terms of that contract*.  Mot. at 16-17. Yet the SAC contains no allegations that Boeing even knew the terms of Plaintiffs' contract with Butler, let alone that Boeing knew that if it sought to negotiate a cost-sharing agreement with Butler, he would choose to breach some unspecified terms of his contract with Plaintiffs.

Furthermore, even if Plaintiffs had pleaded facts demonstrating that Boeing knew the terms of their contract with Butler, and therefore knew that the interference was certain or substantially certain to occur as a result of its action (they have not), courts "routinely dismiss[]" intentional interference claims where the facts indicate the defendant acted in its own legitimate business interest, and "in so doing, indirectly disrupts a plaintiff's contractual relationship."  *SIC Metals, Inc. v. Hyundai Steel Co.*, 2020 WL 2527950, at *5 (C.D. Cal. March 3, 2020); *Dollar Tree Stores Inc. v. Toyama Partners, LLC*, 2010 WL 1688583, at *4 (N.D. Cal. Apr. 26, 2010) (finding there was no cognizable claim where facts indicated the defendant "was acting with a legitimate business purpose.").[7]  Here, the only facts alleged indicate that Boeing

---

[7] *See also Carstens Chevrolet, Inc. v. Gen. Motors, LLC*, 2017 WL 2654903, at *4 (E.D. Cal. June 20, 2017) (no cognizable claim because the defendant "exercised

wanted a cost-sharing agreement with Butler to remediate a property for which they were *jointly* responsible.  Even if this had somehow indirectly led Butler to breach or otherwise disrupt his contract with Plaintiffs, that would be insufficient as a matter of law to meet the intent requirement of Plaintiffs' claims.

Since Plaintiffs have failed to plead sufficient facts to establish the requisite intent, their claims based on intentionality (Causes of Action 1 and 2) should be dismissed.

### C.    Plaintiffs Still Fail to Identify Any Details of the Purported Breach.

Plaintiffs' Opposition also presents no authority contradicting the common-sense principle that pleading intentional inference with a contract requires the plaintiff to identify "the terms of the contracts that were specifically breached [and] how Plaintiff would have known about those contracts."  *United Artists*, 2019 WL 8221088, at *5; *see* Mot. at 18.  Yet Plaintiffs *to this day* have not identified how Butler purportedly breached that contract.  In fact, the SAC is tellingly silent on that point.  That contract is not attached, and Plaintiffs do not identify a single clause that Butler purportedly breached, how, or when.

Plaintiffs' sole authority, *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, is entirely inapposite: the contracts at issue in that case were simple purchase orders for goods, and the defendant did not dispute that it knew the terms of those purchase orders or how they were breached.  2015 WL 3488923, at *6 (N.D. Cal. June 2, 2015).  The Court thus was not even presented with, and certainly did not resolve, the issue raised by Boeing's motion.

Here, by contrast and as discussed above, Plaintiffs provide no basis for concluding that Boeing knew the terms of their contract, (*supra* Section II.B), and

---

legitimate means to secure performance" of its contract with a third party); *Korea Supply Co.*, 29 Cal. 4th at 1158-59 ("The tort of intentional interference with prospective economic advantage is not intended to punish . . . commercial entities for their choice of commercial relationships or their pursuit of commercial objectives.").

both Boeing and the Court are left to guess how Butler purportedly breached his contract with Plaintiffs, including what terms were breached, how and when. *See* Mot. at 18. Plaintiffs' rote recitation of allegations in their Opposition sheds no light on these central outstanding questions. Their Opposition does not even identify *who* breached the contract, much less *how*—information which is uniquely within their possession. *See* Opp'n at 8 ("said contract was breached"); *id.* at 9 (same). Ultimately, Plaintiffs' allegations are insufficient to determine "what contractual rights they possessed" or how they portend they were disrupted. *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015). This requires dismissal of their contractual interference claim (Cause of Action 1). *Id.*

### D. Plaintiffs Are Judicially Estopped From Alleging Their Revised Theory of Their Case.

Plaintiffs' Opposition likewise does little to meaningfully rebut that their claims should also be dismissed because their lone theory is directly contradicted by the express admissions in their prior lawsuit against Butler. Mot. at 19-21. Plaintiffs do not dispute, or even meaningfully address, *any* of the statements they made in the *Butler* litigation. Opp'n at 12-13. If anything, Plaintiff's Opposition *confirms* that the doctrine should apply as another basis to bar Plaintiffs' claims.

Indeed, Plaintiffs' articulation of their claim in this section of their Opposition brief is as follows:

> For years, Boeing had acknowledged that it was required to remediate the degreaser pit. (SAC ¶¶ 13, 14). When Plaintiffs, however, asked Boeing for a simple commitment to acknowledge that it would again commit to remediating the degreaser pit, Boeing demanded that Butler place $5,000,000 into an escrow account before Boeing would commit to remediating the degreaser pit. (SAC ¶¶15-25).

Opp'n at 12-13. Yet both of those sentences are directly contradicted by what Plaintiffs told the state court in their lawsuit against Butler.

Plaintiffs told the state court that (i) they relied solely on *Butler's* statements about what Boeing had claimed responsibility for,[8] and (ii) Butler *lied* when he said that Boeing had claimed sole responsibility for the site.[9]  In particular, Plaintiffs expressly represented to the state court that Butler lied because "*Boeing repeatedly asserted that it is only responsible for a particular section of the Property, not the remaining areas, and specifically not the area operated by Catalina Yachts.*"  Ex. B at 10-11 (emphasis added).  That is, Plaintiffs told the Court that Boeing *was* taking responsibility for the degreaser area; it was just *also* seeking to ensure that Butler took responsibility for *other* areas of the property that were impacted by Catalina Yachts.  Indeed, as these *Butler* pleadings made clear, Boeing never claimed that it would not remediate the degreaser pit: it claimed that Butler should be *jointly* responsible for work at the property by paying for his portion of the impacts.  Exs. A-C; FAC ¶¶ 9-10, 36-37.

The *Butler* pleadings also make clear that it is false that "Boeing demanded that Butler place $5,000,000 into an escrow account before Boeing would commit to remediating the degreaser pit."  Opp'n at 13.  Plaintiffs submitted a declaration from Mr. Weintraub in which he attested that "Boeing *proposed* that Boeing and Catalina Yachts split the responsibility of the environmental cleanup regarding the Property

---

[8] Ex. C ¶¶ 12-14 ("Based on *Mr. Butler's* representations that Catalina Yachts could not be responsible for any contamination . . . and instead the source was likely Rocketdyne/Boeing, Sebitna continued to move the transaction forward . . . From late 2012 . . . into the spring of 2013, I regularly requested updates from Mr. Butler as to his discussions with Boeing . . . However I *did not receive confirmation that Boeing would accept full responsibility*.") (emphasis added); Ex. A (Dkt. 21-1, Butler SAC) at ¶¶ 27-28 ("The financing was contingent on the representation *by Mr. Butler* that Boeing bore all of the responsibility for the contamination and there was no reason to suspect that [Butler] bore any of the responsibility.").

[9] Ex. B (Dkt. 21-2, Opp'n to MSJ) at 15-16 ("Mr. Butler repeatedly asserted that Rocketdyne (and therefore Boeing) was responsible for any contamination, and disclaimed any possibility that contamination was caused by Catalina Yachts . . . However, this too was false . . .").

(with each party being responsible for the areas of contamination they likely caused, and then sharing costs regarding the remaining areas)." Ex. C ¶ 17 (emphasis added). Mr. Weintraub then attached that cost-sharing *proposal* to his declaration. *Id.*; Ex. F (Dkt. 21-6, 04/26/13 Letter). The letter proposed a cost split between Boeing and Butler, proposed using an escrow account to handle the funds, and ended with an *invitation for further discussion*. Ex. F. Nothing in that proposal "demands" anything, nor could Boeing "demand" anything given that it is a non-party to Plaintiffs' contract, and the Water Board dictates remediation requirements. Butler did not accept the proposal, so Boeing proceeded with the remediation of the former Rocketdyne degreaser area of the site itself, and Butler proceeded with the remediation of the former Catalina Yachts' portions of the site—all at the direction of the Water Board.[10]

Because these admissions directly contradict Plaintiffs' theory in the SAC, Plaintiffs are estopped from pursuing it. *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996) (Judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.").

### E. Plaintiffs Fail to Show that Boeing's Conduct Falls Outside the Protection of the *Noerr-Pennington* Doctrine.

Finally, Plaintiffs' Opposition fails to meaningfully contest that Boeing's communications at the April 19, 2013 meeting with Plaintiffs concerning the investigation and cleanup of the Property are related to its subsequent petition to the Water Board. These communications are thus well within the protected "breathing

---

[10] *See* Ex. M (Dkt. 21-13, Boeing's remediation plan); Ex. O (Dkt. 21-15, Letter from Water Board to Butler); Ex. P (Dkt. 21-16, Butler's remediation plan). The Water Board recently notified the public that it has made a No Further Action determination *again* based on Boeing's remediation of the degreaser areas since 2013. *See* Exs. Q-R.

14

space" of the *Noerr-Pennington* doctrine.[11]

Indeed, Plaintiffs' Opposition does not address or dispute that the very same evidence that was discussed at this meeting was subsequently filed with the Water Board *jointly* by Boeing and Butler as part of the pre-remediation approval process. Mot. at 25; Ex. N (Dkt. 21-14, Phase II Report) at 27-37.  Nor do Plaintiffs address or dispute that the proposal letter that is the basis of virtually their entire claim also makes clear that these discussions were anticipating Boeing performing "environmental investigation and remediation work necessary to apply for a No Further Action letter ('NFA') from [the Water Board]."  Ex. F at 2.  Accordingly, (i) Boeing petitioned the Water Board to regulate Boeing, Butler, and Catalina Yacht's cleanup of the Property;[12] (ii) Boeing's alleged communications at the April 19, 2013 meeting were related to *that* petition; and (iii) following the successful petition, Boeing, Butler, and Catalina Yachts submitted dozens of joint reports and thousands of pages of data to the Water Board as part of a coordinated cleanup effort.

Against all of those undisputed facts, Plaintiffs' response is the conclusory assertion that "Plaintiffs' lawsuit does not involve Boeing's petitioning activity." Opp'n at 14.  To the extent that is intended to suggest that *Noerr-Pennington*'s protections extend only to literal petitioning activity, that notion has long been rejected in each of the cases Boeing cited that Plaintiffs simply ignore.  Mot. at 24-25.

Indeed, the operative question is not whether the SAC includes allegations of a petition, but whether Plaintiffs are seeking to hold Boeing liable for conduct *incidental or related* to a petition.  *Id.*  Both the Supreme Court and Ninth Circuit have made clear that *Noerr-Pennington* protects conduct between private parties—like the conduct alleged here—so long as it sufficiently relates to a legitimate petitioning

---

[11] Plaintiffs' Opposition also completely ignores—and thus concedes—that Boeing's conduct is protected by Section 47(b) of the California Code of Civil Procedure.  *See generally* Opp'n.

[12] This was alleged in the FAC and then tellingly removed.  FAC ¶¶ 36-37.

activity.  *See, e.g.*, *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988) (private action . . . cannot form the basis for . . . liability if it is 'incidental' to a valid effort to influence governmental action"); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006) (holding that "communications between private parties are sufficiently within the protection of the Petition Clause to trigger the *Noerr–Pennington* doctrine, so long as they are sufficiently related to petitioning activity"). Plaintiffs do not dispute that Boeing's alleged communications concerning the investigation and cleanup of the Property were related to its Water Board petition to add Butler and Catalina Yachts as responsible parties.  Mot. at 5-7, 22-25; Exs. C, E-F.  Because Boeing's alleged conduct relates to a legitimate petition, it falls squarely within the protected breathing space of *Noerr-Pennington*.[13]

Moreover, neither the SAC nor Plaintiffs' Opposition provides any meaningful support for the notion that Boeing's petitioning to the Water Board was somehow a "sham."  Plaintiffs' Opposition and SAC are completely devoid of any facts or allegations evidencing a mandatory prerequisite to invoking the sham exception: that Boeing's petition was "objectively baseless."  *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).  Plaintiffs must show that Boeing's petition was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."  *Id*.  Here, Boeing not only reasonably expected success on the merits, but actually *achieved success*.  Mot. at 7 n.9; Ex. L-R.  "[A] successful 'effort to influence governmental action . . . certainly cannot be characterized as a sham.'"  *Id*. at 58.

---

[13] The Ninth Circuit also expressly rejected Plaintiffs' argument that Boeing's conduct falls outside of *Noerr-Pennington* because it allegedly was intended to further Boeing's own business interests.  *See Sosa*, 437 F.3d at 935 n.8 ("We also reject Sosa's argument that because the demand letters here were sent from one private party to another to further DIRECTV's commercial interests, they do not implicate the Petition Clause. Indeed, in nearly every instance in which *Noerr–Pennington* has been applied, including *Noerr* itself, the petitioning conduct at issue was carried out to further the petitioning party's commercial interests").

16

Rather than allege facts showing that this threshold requirement is met, Plaintiffs argue that Boeing had "ulterior motives" and that its "primary purpose was to sabotage the business deal." Opp'n at 17. But, the Supreme Court expressly rejected the argument that subjective motivation is enough to invoke the sham exception. Indeed, in *Columbia Pictures* the Supreme Court stated that "we have repeatedly reaffirmed that evidence of anticompetitive intent or purpose alone cannot transform otherwise legitimate activity into a sham." 508 U.S. at 59. And, importantly, it is "[o]nly if [the] challenged [petitioning activity] is objectively meritless may a court examine the litigant's subjective motivation."[14] *Id*. at 60. Given Boeing's *granted* petition was clearly not objectively baseless, Boeing's alleged ulterior motives or primary purpose are irrelevant.

## F. Providing Plaintiffs With a Fourth Attempt to Plead a Cognizable Claim Would Be Futile.

Despite each of the many, independent bases for dismissal discussed above, Plaintiffs contend that the Court should give them a *fourth* opportunity to plead their claims. Opp'n at 17-18. Yet Plaintiffs' Opposition fails to articulate any new facts they believe could cure these many deficiencies. Accordingly, amendment would be a futile exercise, and leave to amend should be denied. *Leyba v. NV Energy, Inc.*, 735 Fed. App'x 475, 476 (9th Cir. 2018) (affirming denial of leave to amend as futile because the plaintiff had failed to identify facts that could cure the deficiencies).[15]

---

[14] For this same reason, Plaintiffs' reliance on *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.* does not help them. In *Clipper*, defendants *admitted* "their protests were filed automatically and without regard to merit." 690 F.2d 1240, 1257 (9th Cir. 1982). Thus, the Ninth Circuit found that the petitions were objectively baseless and went on to examine defendants' subjective intent. *Id*.

[15] *See also Thurston v. FCA US LLC*, 2018 WL 700939, at *5, n.6 (C.D. Cal. Jan. 26, 2018) (denying leave to amend "because Plaintiff has failed to identify any facts in her Opposition that indicates that leave to amend would not be futile"); *Marchetti v. Superior Ct. of Cal.*, 2016 WL 4658959, at *8 (N.D. Cal. Sept. 7, 2016) (dismissing plaintiff's first amended complaint because she had not "identif[ied] any additional facts that could be added to an amended complaint.").

This futility is only compounded by the fact that Plaintiffs are judicially estopped from pursuing the only theory articulated in their Opposition.  *See Mendaros v. JPMorgan Chase Bank, Nat'l Ass'n*, 2017 WL 2352143, at *8 (N.D. Cal. May 31, 2017) (denying leave to amend because plaintiff does not "identify other facts or theories that would avoid application of *res judicata*.").

Indeed, Plaintiffs are well past the point where leave to amend is simply granted as a matter of course: this is their *third* complaint, it has been *more than one year* since they initiated this action (Dkt. 1-1); more than *seven years* have elapsed since the events complained of transpired; Plaintiffs have already had the benefit of developing a full factual record in the *Butler* litigation; and Plaintiffs have had the benefit of Boeing repeatedly explaining the deficiencies in their complaints.  *Card*, 2020 WL 353464, at *4 (denying amendment because "Plaintiff has had multiple opportunities to cure the pleading deficiencies" and failed).  Even if the Court thought amendment here "might not be futile," the Ninth Circuit maintains that this is "precisely" the kind of case where denying leave to amend is appropriate because Plaintiffs present "no new facts" and provide "no satisfactory explanation for [their] failure to fully develop [their] contentions originally."  *Allen*, 911 F.2d at 374.  Plaintiffs' request for leave to amend should be denied.

## III.    CONCLUSION

For the foregoing reasons, and those set forth in Boeing's opening brief, Plaintiffs' Second Amended Complaint should be dismissed in its entirety with prejudice.

DATED:  July 20, 2020

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Tammy A. Tsoumas*

Tammy A. Tsoumas (SBN 250487)
tammy.tsoumas@kirkland.com
Jonathan J. Faria (SBN 274019)
jonathan.faria@kirkland.com
Matthew Summers (SBN 311324)
matthew.summers@kirkland.com
Leonora A. Cohen (SBN 319463)
lena.cohen@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone:  (310) 552-4200
Facsimile:   (310) 552-5900

Attorneys for Defendant
The Boeing Company