# EXHIBIT A

1  Tammy A. Tsoumas (SBN 250487)
   tammy.tsoumas@kirkland.com
2  Matthew Summers (SBN 311324)
   matthew.summers@kirkland.com
3  Leonora A. Cohen (SBN 319463)
   lena.cohen@kirkland.com
4  KIRKLAND & ELLIS LLP
   2049 Century Park East
5  Los Angeles, CA  90067
   Telephone:   (310) 552-4200
6  Facsimile:    (310) 552-5900

7  *Attorneys for Defendant*
   *The Boeing Company*

8

### UNITED STATES DISTRICT COURT

9

### CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 WEINTRAUB FINANCIAL SERVICES, INC. and SEBITNA, LLC, | Case No.  2:20-cv-03484-FLA-GJS |
| 12 | Hon. Gail J. Standish |
| 13          Plaintiffs, | Courtroom:  640 |
| 14      v. | **THE BOEING COMPANY'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: THE BOEING COMPANY'S MOTION FOR EVIDENTIARY AND MONETARY SANCTIONS [DKT. 85]** |
| 15 THE BOEING COMPANY, | |
| 16          Defendant. | |
| 17 | |

18
19
20
21
22
23
24
25
26
27
28

1    Defendant The Boeing Company ("Boeing") filed a Motion for Evidentiary and

2  Monetary Sanctions (Dkt. 85 ("Motion")) seeking sanctions against Plaintiffs

3  Weintraub Financial Services, Inc. and Sebitna, LLC ("Plaintiffs") and their counsel

4  for spoliation under Federal Rule of Civil Procedure 37(e), Federal Rule of Civil

5  Procedure 51(a)(1), and the Court's inherent authority. Pursuant to this Court's July 15,

6  2022 Order (Dkt. 103), Boeing hereby submits its proposed findings of fact and

7  conclusions of law.

8                           **FINDINGS OF FACT**

9        **A.    Relevant Background of Plaintiffs' Claim**

10       1.     Plaintiffs are "sophisticated real estate developers" (Fourth Amended

11 Complaint ("4AC"), Dkt. 33 at 5-6,[1] para. 26) owned and managed by Richard and

12 Liane Weintraub (*see, e.g.,* Ex. G to Cohen Decl. in Support of Boeing's Mot. for

13 Evidentiary and Monetary Sanctions, Dkt. 85-1[2] at 187-188, para. 6; *id*. at 189).

14 Plaintiffs entered into an agreement to purchase a property located at 21200 Victory

15 Boulevard in Woodland Hills (the "Property") from non-party Butler Enterprises

16 ("Butler"), owned by Frank Butler, in November 2010 for $21.5 million plus a future

17 interest in the Property (the "Purchase Agreement"). 4AC, Dkt. 33 at 2-3, para. 7-8.

18 After approximately two and a half years in escrow, the deal fell apart. Ex. B, Dkt. 85-

19 1 at 46:5-18.

20       2.     Plaintiffs sued Butler and its affiliates in 2013, claiming that Mr. Butler

21 misrepresented and fraudulently concealed evidence showing his company, Catalina

22 Yachts, was responsible for environmental contamination at the Property. Ex. A to

---

[1] Pursuant to paragraph 3 of this Court's July 15, 2022 Order (Dkt. 103), all page number references are the page number reflected on the PACER ECF header.

[2] All subsequent references to exhibits are likewise attached to the Declaration of Leonora Cohen in Support of Boeing's Motion for Evidentiary and Monetary Sanctions (Dkt. 85-1), since all exhibits filed in connection with this Motion are attached to the same Declaration of Leonora Cohen.

23
24
25
26
27
28

Request for Judicial Notice in Support of Mot. to Dismiss Second Am. Compl., Dkt. 21-1 at 14-15, para 42.

3.  While the *Butler* Litigation was pending, Plaintiffs and Boeing entered into a tolling agreement in 2015 covering "claims arising from or relating to the subject matter" of the *Butler* Litigation—that is, Plaintiffs' attempt to purchase the Property. Ex. G, Dkt. 85-1 at 186, para. 3.

4.  After prevailing in the *Butler* Litigation (Ex. A, Dkt. 85-1 at 11:13-24), Plaintiffs filed this action against Boeing in May 2019. Ex. 1 to Notice of Removal to Federal Court, Dkt. 1-1 at 4. The only claim at issue in this litigation is a claim for intentional interference with contractual relations. *See* 4AC, Dkt. 33 at 1. Plaintiffs claim that Boeing intentionally caused Butler to refuse to close the sale in breach of the Purchase Agreement by sending Butler a letter that required (i) Butler to put $5,000,000 into an environmental escrow account and (ii) Butler and Plaintiffs to provide an unlimited guarantee for additional funding. *Id*. at 5, para. 22; *id*. at 7, para. 32. Plaintiffs claim $40 million in damages from Boeing. *Id*. at 7, para. 32.

5.  In the course of litigation, Plaintiffs have suggested they may argue that Boeing prevented them from being able to secure financing to fund the purchase of the Property, which they appear to advance as part of their damages theory. *See, e.g.,* Pl. Opp'n to Def. Rule 11 Motion, Dkt. 74 at 14 ("There will be testimony that banks' initial refusal to fund the transaction jeopardizes the resale of the property because subsequent buyers of the property would encounter the impossibility of outside funding as well."); Ex. B, Dkt. 85-1 at 34:8-24 (Plaintiffs "did have a lender . . . in place that would have closed on the transaction but for [Boeing's] interference.").

6.  The following people are relevant to Plaintiffs' claim and specifically their contemplated financing theory:

    a.  Richard Weintraub: Plaintiffs' principal agent and 30(b)(6) representative who describes himself as the most knowledgeable person about the Purchase Agreement and surrounding events. Ex.

2

A, Dkt. 85-1 at 10:14-19; 26:14-20.

b. Liane Weintraub: Plaintiff Sebitna LLC's manager and financial guarantor. Ex. J, Dkt. 85-1 at 212 ("[T]he loan amount will be a function of Liane's financials."); Ex. G, Dkt. 85-1 at 187-188, para. 6; *id*. at 189.

c. Peter Koenig: One of Plaintiffs' former Chief Financial Officers who Mr. Weintraub identified as having been involved in—if not leading—communications with lenders like U.S. Bank on behalf of Plaintiffs to secure financing for the transaction. Ex. B, Dkt. 85-1 at 36:19-24, 37:15-19, 38:12-19.

d. Mark Slomann: Plaintiffs' other former Chief Financial Officer who Mr. Weintraub identified as having been involved in—if not leading—communications with lenders like U.S. Bank on behalf of Plaintiffs to secure financing for the transaction. Ex. B, Dkt. 85-1 at 36:19-24, 37:15-19, 38:12-19.

e. John J. ("J.J.") O'Brien: Plaintiffs' former agent and representative on Plaintiffs' attempted purchase of the Property, including in communications with Boeing. Ex. A, Dkt. 85-1 at 27:2-25.

f. Tatyana Goulak: Plaintiffs' former controller who departed in February 2020 and was involved in Plaintiffs' attempted purchase of the Property. Ex. D, Dkt. 85-1 at 98: 6-15; Ex. P, Dkt. 85-1 at 245, para. 2.

7. Additionally, the following people were identified by Plaintiffs as relevant to their collection and preservation efforts:

a. Lisa Strickland: Mr. Weintraub's assistant and office manager since 2016 who Mr. Weintraub identified as responsible for Plaintiffs' preservation efforts and for collecting documents for this litigation. Ex. A, Dkt. 85-1 at 14:23-15:24, 23:20-4:3; Ex. B, Dkt. 85-1 at

3

51:3-14.

b.    Jessica Carpowich: Mr. and Mrs. Weintraub's personal assistant who Mr. Weintraub identified as also responsible for Plaintiffs' preservation efforts and for collecting documents for this litigation. Ex. A, Dkt. 85-1 at 14:23-15:24, 23:20-4:3; Ex. B, Dkt. 85-1 at 51:3-14; Ex. E, Dkt. 85-1 at 132:20-22.

c.    Alex Shaw: Plaintiffs' information technology ("IT") service provider since 2020 who Mr. Weintraub identified as additionally responsible for Plaintiffs' preservation efforts and the best person to identify the steps taken by Plaintiffs to preserve electronic data related to this litigation. Ex. B, Dkt. 85-1 at 39:11-17, 47:18-24, 51:3-14, 52:9-21; Ex. F, Dkt. 85-1 at 167:10-14.

**B.    Plaintiffs' Spoliation**

8.    The preponderance of the evidence demonstrates that Plaintiffs have never issued a litigation hold in connection with this litigation, and neither Plaintiffs' principals nor the individuals responsible for Plaintiffs' collection and technology systems were made aware of Plaintiffs' preservation obligations. Ex. B, Dkt. 85-1 at 48:3-24 (Mr. Weintraub testifying that he does not recall ever seeing a litigation hold for this litigation); Ex. C, Dkt. 85-1 at 67:2-17 (Mrs. Weintraub testifying that she does not remember if she ever received a notice telling her to preserve documents related to litigation about the Property); Ex. D, Dkt. 85-1 at 87:8-12 (Ms. Strickland testifying that she was never told not to delete anything); *id*. at 107:18-108:9 (Ms. Strickland testifying that she has not received anything directing her to preserve documents relating to this litigation); Ex. E, Dkt. 85-1 at 148:5-23 (Ms. Carpowich testifying that she does not recall ever being told not to delete certain e-mails related to any specific topics from her own e-mail; *id*. at 150:2-13 (Ms. Carpowich testifying that she does not recall receiving any kind of notice or anything directing her to preserve documents related to this litigation); Ex. F, Dkt. 85-1 at 176:18-24 (Mr. Shaw testifying that he

4

has never received any notice with instructions regarding the types of documents that should be preserved because they are relevant to this litigation).

9.    Mr. Weintraub never suspended the automatic deletion function in his email during the pendency of this litigation, and he cannot access his emails from 2012 or 2013 (the time frame most salient to this action) or verify relevant email was preserved. Ex. A, Dkt. 85-1 at 17:1-18:8; Ex. B, Dkt. 85-1 at 35:9-13.

10.    Mrs. Weintraub permitted the server hosting her primary email account to be demolished in 2019 without first taking steps to preserve emails relevant to this litigation from that account. Ex. C, Dkt. 85-1 at 64:16-65:2; 65:3-66:16; 65:23-66:8.

11.    Plaintiffs do not dispute that they have no knowledge of how, where, or if relevant departed employees' files were stored to date. Ex. A, Dkt. 85-1 at 12:5-13:12 (Mr. Weintraub testifying that he does not know what happens to departed employees' computer); Ex. B, Dkt. 85-1 at 54:13-59:3 (Mr. Weintraub testifying that he did not know what happened to the electronic or hard copy files of former employees J.J. O'Brien, Mark Slomann, Peter Koenig, or Tatyana Goulak); Ex. D, Dkt. 85-1 at 95:5-9 (Ms. Strickland testifying that she does not know if Mr. O'Brien's e-mails were preserved by the company); *id*. at 97:9-12 (testifying that she does not know if Mr. O'Brien's e-mails were preserved by the company); *id*. at 98:6-100:16 (testifying that she did not know if departed accounting employee Tatyana Goulak's emails were archived when she departed, has not accessed her emails, and does not have access to any of Ms. Goulak's local files); *id*. at 125:19-22 (testifying that she does not know whether hard copy materials from departed employees, such as their notes, are maintained by the company); Ex. E, Dkt. 85-1 at 152:4-10 (Ms. Carpowich testifying that she has no knowledge regarding Weintraub Real Estate Group or its affiliates' typical procedures for how it deals with the electronic or hard copy materials for departed employees); Ex. F, Dkt. 85-1 at 167:10-14 (Mr. Shaw confirming that he does not have knowledge of Plaintiffs' document retention practices or policies before 2020); *id*. at 168:18-169:3 (confirming he does not have any knowledge of Plaintiffs'

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: THE BOEING COMPANY'S MOTION FOR EVIDENTIARY AND MONETARY SANCTIONS [DKT. 85]

document retention policies at any time); *id*. at 169:21-171:17 (confirming he does not know how Plaintiffs' employees store or maintain their documents, does not know how any email archives were created or are complete, and does not know if the email archives found exist for either former employees or all employees); *id*. at 183:11-23 (Mr. Shaw does not know if devices of departed employees were wiped); *compare* Boeing's Mot. for Evidentiary and Monetary Sanctions, Dkt. 85 at 7 *with* Pl. Opp'n to Mot. for Evidentiary and Monetary Sanctions, Dkt. 93 *generally*.

12.    Mr. O'Brien's computer was "probably . . . used by another employee" or "thrown out." Ex. B, Dkt. 85-1 at 54:13-21.

13.    Plaintiffs do not dispute that Plaintiffs' counsel did not familiarize themselves with Plaintiffs' data retention systems until late 2021 at the earliest, after Boeing repeatedly raised concerns about Plaintiffs' preservation and collection efforts. *Compare* Boeing's Mot. for Evidentiary and Monetary Sanctions, Dkt. 85 at 7 *with* Pl. Opp'n to Mot. for Evidentiary and Monetary Sanctions, Dkt. 93 *generally*; *see also* Ex. F, Dkt. 85-1 at 157:15-17; 166:10-17.

14.    Plaintiffs and their counsel also do not dispute that they did not learn the infrastructure of Plaintiffs' ESI systems nor the proper methodology for preserving and searching for ESI, failed to ensure documents were not being destroyed, and could not answer simple questions about the ESI search methodology used. *Compare* Boeing's Mot. for Evidentiary and Monetary Sanctions, Dkt. 85 at 10-11 *with* Pl. Opp'n to Mot. for Evidentiary and Monetary Sanctions, Dkt. 93 *generally*; *see also* Ex. O, Dkt. 85-1 at 240-241, bullet points; Ex. P, Dkt. 85-1 at 246, para. 1-2.

15.    Plaintiffs did not determine which custodians were likely to have documents relevant to this litigation. Ex. A, Dkt. 85-1 at 14:23-15:24, 16:3-12, 23:20-24:3 (Plaintiffs' 30(b)(6) representative identifying Lisa Strickland and Jessica Carpowich as the people who conducted searches for documents in this litigation); Ex. D, Dkt. 85-1 at 119:18-24 (Ms. Strickland testifying in response to the question, "Did you talk to anybody after you received the request for production about where

6

responsive documents might be? A: No . . .") (objection omitted); *id*. at 123:5-124:1 (Ms. Strickland testifying that she did not know who were the sources of the files collected in response to Boeing's RFP and she did not seek to find out whose documents were in the network folder); Ex. E, Dkt. 85-1 at 136:6-25 (Ms. Carpowich testifying that she has not seen requests from Boeing and did not know what this litigation was about); *id*. at  141:22-24 (Ms. Carpowich testifying in response to the question "Have you conducted any searches related to this litigation? A: Not that I recall."); Ex. F, Dkt. 85-1 at 170:3-171:16 (Mr. Shaw testifying that he had no knowledge about the accuracy or completeness of company archives, and was unaware whether archives exist for all employees).

16.    In response to Boeing's RFPs, Plaintiffs did not search for or collect any emails or hard copy records. Ex. A, Dkt. 85-1 at 14:23-15:24, 16:3-12, 23:20-24:3 (Plaintiffs' 30(b)(6) representative identifying Lisa Strickland and Jessica Carpowich as the people who conducted searches for documents in this litigation); Ex. D, Dkt. 85-1 at 109:23-110:15; 113:3-24; 118:22-120:6 (Ms. Strickland only searched one network folder in response to Boeing's requests for production); Ex. E, Dkt. 85-1 at 141:22-24 (Ms. Carpowich testifying that she did not conduct any searches related to this litigation).

17.    Plaintiffs do not dispute that Plaintiffs have no firsthand knowledge of how most of the materials they produced in this action were collected or selected, or from whom, and have no knowledge of the completeness of these records. Ex. O, Dkt. 85-1 at 240; Ex. P, Dkt. 85-1 at 256; Ex. D, Dkt. 85-1 at 109:4-21.

18.    Mr. Koenig and Mr. Slomann collectively appear in only approximately sixteen emails produced by Plaintiffs and each of these comes from threads that appear to have been pulled from other employees' files. Cohen Decl. in Support of Boeing's Mot. for Evidentiary and Monetary Sanctions, Dkt. 85-1 para. 25. Mrs. Weintraub's email address similarly appears in only a handful of emails, none of which was pulled from her custodial file. *Id*.

19.    Plaintiffs' corporate representative, Mr. Weintraub, responded "I don't recall" or "I don't remember" more than 125 times during his deposition. Cohen Decl. in Support of Boeing's Mot. for Evidentiary and Monetary Sanctions, Dkt. 85-1 at 6, para. 26.

20.    Mr. Weintraub also reversed course during his deposition from prior sworn statements submitted to the state court. *See, e.g.*, Ex. A, Dkt. 85-1 at 19:4-22:24; Ex. B, Dkt. 85-1 at 40:14-45:22 (contradicting prior sworn statements when confronted with them).

21.    In December 2021, Boeing notified Plaintiffs of its concerns regarding spoliation. *See* generally, Ex. M, Dkt. 85-1 at 230, para. 4. Plaintiffs "vehemently" opposed Boeing's contention that spoliation has occurred and insisted that further discovery would show there was no spoliation in December 2021. Ex. Q, Dkt. 85-1 at 55, para. 2. Plaintiffs also continued to maintain that their document production was "adequate and comprehensive." *Id*. On January 11, 2022, the parties jointly informed the Court that they were continuing to meet and confer regarding the spoliation issues and requested an extension of the schedule to conduct the additional discovery into the spoliation and other discovery issues. Stipulation to Extend Case Deadlines, Dkt. 60 at 2. Boeing then deposed the people identified by Plaintiffs as knowledgeable about Plaintiffs' collection and preservation efforts. *See* Ex. A, Dkt. 85-1 at 14:23-15:24; Ex. B, Dkt. 85-1 at 51:3-14; 52:9-21; *see generally*, Exs. D-F, Dkt. 85-1. Those depositions concluded on February 18, 2022. Cohen Decl. in Support of Boeing's Mot. for Evidentiary and Monetary Sanctions, Dkt. 85-1 at 4, para. 24. Plaintiffs continued to request more time to investigate Boeing's claims. *Id*.

22.    On April 6, 2022, Boeing informed Plaintiffs that it intended to file the instant Motion. *Id*. On April 13, 2022, the Parties met and conferred by telephone. *Id*. Boeing offered to forego this Motion if Plaintiffs would stipulate to the issue preclusion sanction sought by Boeing's Motion. *Id*. Plaintiffs' counsel was receptive to that suggestion, so the Parties continued the meet and confer process regarding

8

Boeing's proposed stipulation over the following few weeks. *Id*. at 4-5, para. 24. During the meet and confer process, Plaintiffs repeatedly informed Boeing that they anticipated coming to an agreement on such a stipulation. *Id*. Plaintiffs also represented to the Court in a joint stipulation that "the Parties anticipate reaching an agreement to address Boeing's concerns [regarding Plaintiffs' spoliation] without burdening the Court, and thus anticipate filing a joint stipulation precluding Plaintiffs from making certain arguments related to their claim in exchange for Boeing foregoing an anticipated Rule 37 motion." Stipulation to Extend Case Deadlines, Dkt. 76 at 4-5. Boeing further provided Plaintiffs' counsel additional time to consider the stipulation because Plaintiffs' counsel was repeatedly unavailable due to an ongoing arbitration, personal family events, and illness, and Boeing wanted to avoid bringing this Motion if possible. Cohen Decl. in Support of Boeing's Mot. for Evidentiary and Monetary Sanctions, Dkt. 85-1 at 5, para. 24. After more than a month of negotiations, the parties did not reach an agreement on the stipulation and Boeing filed the instant Motion. *Id*.

## CONCLUSIONS OF LAW

## II.    LEGAL STANDARDS

### A.    Rule 37(e)

23.    Federal Rule of Civil Procedure 37(e) specifically provides for sanctions when electronically stored information ("ESI") that should have been preserved is lost. Fed. R. Civ. P. 37(e).

24.    Spoliation under Rule 37(e) has occurred where "(1) the ESI 'should have been preserved in the anticipation or conduct of litigation'; (2) the ESI is 'lost because a party failed to take reasonable steps to preserve it'; and (3) '[the ESI] cannot be restored or replaced through additional discovery.'" *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *9 (N.D. Cal. Apr. 24, 2020).

25.    Once the Court has determined that spoliation has occurred, the Court determines which sanctions are appropriate. Rule 37(e)(2) specifically authorizes sanctions in the form of a presumption that lost information was unfavorable to the

9

party, among other sanctions. Fed. R. Civ. P. 37(e)(2). Under that Rule, "there is no requirement that the [C]ourt find prejudice to the non-spoliating party" where the Court finds intent. *Porter v. City and Cnty. of San Francisco*, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018). "'This is because the finding of intent required by [Rule 37(e)(2)] can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." *Id* (quoting Fed. R. Civ. P. 37(e) 2015 Advisory Comm. Notes).

26.    Even without a finding of intent, Rule 37(e)(1) provides that "[o]nce a finding of prejudice is made," "[m]uch is entrusted to the court's discretion" to determine appropriate sanctions. *See* Fed. R. Civ. P. 37(e)(1) 2015 Advisory Comm. Notes. "In an appropriate case, it may be that serious measures are necessary to cure prejudice found by the court, such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies." *Id*.

## B.    The Court's Inherent Authority

27.    "It is firmly established in the Ninth Circuit that 'a federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence,' which includes the power 'to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior.'" *Apple Inc. v. Samsung Elecs. Co., Ltd.,* 888 F. Supp. 2d 976, 985 (N.D. Cal. 2012) ("*Apple II*") (quoting *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)). Courts may sanction parties under their inherent authority for spoliation of either physical evidence, ESI, or both. *See, e.g., State Farm Fire and Cas. Co. v. Gen. Motors, LLC*, 542 F. Supp. 3d 1124, 1128 (D. Idaho 2021) (considering spoliation of physical evidence under the court's inherent authority); *Al*

10

*Otro Lado, Inc. v. Wolf*, 2021 WL 631789, at *2 (S.D. Cal. Feb. 18, 2021) ("The Court may sanction a party who has spoliated evidence in the exercise of its inherent powers, or under Federal Rule of Civil Procedure 37."); *Meta Platforms, Inc. v. BrandTotal Ltd.*, 2022 WL 1990225, at *5-7 (N.D. Cal. June 6, 2022) (finding that the negligent destruction of a subset of data logs warranted an adverse inference and monetary sanctions "under the Court's inherent authority even if not under Rule 37(e)," given that the court's inherent authority gave it greater flexibility to craft appropriate sanctions).

28.    The 2015 amendment to Rule 37 did not deprive the Court of its inherent power to sanction parties for spoliation and provides an appropriate ground for sanctions here. *See, e.g., Meta Platforms*, 2022 WL 1990225, at *5-7. First, Boeing's Motion is based on Plaintiffs' failure to take steps to preserve any evidence, including hard copy materials such as handwritten notes (*see, e.g.,* Boeing's Motion for Evidentiary Sanctions, Dkt. 85 at 11, 20). Because Rule 37(e) applies only to ESI, it is not the appropriate ground on which to base sanctions for spoliation of physical materials. *See* Fed. R. Civ. P. 37(e) 2015 Advisory Committee Notes (the new Rule 37(e) "applies *only* to electronically stored information") (emphasis added). Second, courts in the Ninth Circuit continue to regularly award sanctions for spoliation under their inherent authority following the 2015 amendment to Rule 37. *See, e.g., Meta Platforms*, 2022 WL 1990225, at *7; *Al Otro Lado, Inc.*, 2021 WL 631789, at *2. Indeed, courts in this circuit have recognized that (i) the court's inherent authority can provide greater flexibility in crafting appropriate sanctions for spoliation, *Meta Platforms*, 2022 WL 1990225, at *7; (ii) relying on their inherent authority to levy sanctions is particularly appropriate where the moving party does not assert that the spoliating party failed to obey a discovery order, *Karma Auto. LLC v. Lordstown Motors Corp. et al.*, 2021 WL 4691908, at*2 (C.D. Cal. Sept. 16, 2021); and (iii) the Advisory Committee cannot deprive courts of their inherent power, and "it would be poor public policy to require the courts to rely solely upon the Rules to address

11

improper conduct such as spoliation of evidence," *Hugler v. Sw. Fuel Mgmt., Inc.*, 2017 WL 8941163, at *8 (C.D. Cal. May 2, 2017).

29.    Courts typically find that sanctions for spoliation are warranted under their inherent authority where (i) "the party having control over the evidence had an obligation to preserve it at the time it was destroyed;" (ii) "the records were destroyed with a culpable state of mind," which courts find where the spoliating party destroyed evidence when it knew or should have known that a duty to preserve existed; and (iii) "the evidence was relevant to the party's claim or defense," which may be inferred. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1138-39 (N.D. Cal. 2012) ("*Apple I*"). A showing of a "culpable state of mind" is not required, however, where prejudice is found because "[t]he court's inherent authority to impose sanctions for the wrongful destruction of evidence includes the power to exclude evidence that, given the spoliation, would unfairly prejudice an opposing party." *Perez v. Shippers Transp. Express, Inc.*, 2014 WL 12591809, at *9 (C.D. Cal. July 8, 2014). "Whether to impose preclusion sanctions thus depends on the extent to which the [aggrieved party] was prejudiced by [the spoliating party's] spoliation of evidence." *Id.*

30.    Once the Court determines spoliation has occurred, the Court has broad discretion to determine the appropriate sanctions under its inherent authority, from "minor sanctions, such as the awarding of attorneys' fees, to more serious sanctions, such as . . . instructing the jury that it may draw an adverse inference." *Apple I*, 881 F. Supp. 2d at 1135-36; *see also In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1077-78 (N.D. Cal. 2006) (awarding issue preclusion sanctions, an adverse inference instruction, and reasonable attorneys' fees under the court's inherent authority to sanction the spoliating party for the wrongful destruction of evidence).

### C.    Rule 51(a)(1)

31.    Federal Rule of Civil Procedure 51(a)(1) permits a party to make requests for jury instructions at the close of evidence at trial or "at any earlier reasonable time." *See* Fed. R. Civ. P. 51(a)(1); *see also Apple II*, 888 F. Supp. 2d at 995. It provides

another appropriate ground upon which an aggrieved party may seek evidentiary sanctions against another party for spoliation of evidence, once the court finds that spoliation has occurred. *See id.* at 996-1000.

## III.    PLAINTIFFS' SPOLIATION OF EVIDENCE WARRANTS SANCTIONS

### A.    Plaintiffs' Duty to Preserve Evidence

32.    Boeing's Motion centers on Plaintiffs' failure to take reasonable steps to preserve evidence and subsequent destruction of evidence under their control since Plaintiffs filed this action in 2019. *See* Boeing's Motion for Evidentiary Sanctions, Dkt. 85 at 16; *see also Perez*, 2014 WL 12591809, at *4 (a duty to preserve "certainly" attaches when a complaint is filed). Plaintiffs do not dispute that they have had a duty to preserve relevant evidence during this timeframe and that the evidence at issue was under their control. Accordingly, Plaintiffs had a duty to preserve materials throughout the pendency of this litigation. *Perez*, 2014 WL 12591809, at *4.

### B.    Plaintiffs Lost Evidence Because They Failed to Take Reasonable Steps to Preserve It.

33.    Plaintiffs failed to take reasonable steps to preserve evidence and lost relevant evidence as a result. "'Once the duty to preserve attaches, a party must suspend any existing policies related to deleting and destroying files and preserve all relevant documents related to the litigation.'" *Blumenthal Distrib.*, 2016 WL 6609208, at *11 (citation omitted). "[I]mplementation of a full litigation hold to ensure preservation of relevant documents is required." *Id.* (citing *Apple II*, 888 F. Supp. 2d at 991-92).

34.    Plaintiffs and their counsel had an affirmative duty to promptly issue and monitor compliance with a litigation hold tailored to this lawsuit after their preservation duty arose. *HM Elecs., Inc. v. R.F. Techs., Inc.*, 2015 WL 4714908, at *21 (S.D. Cal. Aug. 7, 2015), *vacated as moot in part following settlement*, 171 F. Supp. 3d 1020 (S.D. Cal. 2016) (quoting Cal. State Bar Formal Opn. No. 2015-193 at 3 n.6); *Apple II*, 888 F. Supp. 2d at 998 (finding that failure to issue litigation hold was "not

just simple negligence but rather conscious disregard of [party's] duty to preserve").

35.     Plaintiffs also were required to know and understand Plaintiffs' ESI systems and storage; implement "appropriate ESI preservation procedures," such as suspending any existing deletion or destruction policies; "identify custodians of potentially relevant ESI;" and interview them to identify, preserve, collect, and produce ESI. *HM Elecs.*, 2015 WL 4714908, at *21; *see also* Advisory Committee Notes to Fed. R. Civ. P. 37(e).

36.     Plaintiffs and their counsel abdicated their obligations to communicate the duty to preserve evidence and take steps to in fact preserve materials. *HM Elecs.*, 2015 WL 4714908, at *22. The preponderance of the evidence demonstrates that Plaintiffs never issued a litigation hold for this action, which is alone enough to find that Plaintiffs did not take reasonable steps to preserve evidence. *Apple II*, 888 F. Supp. 2d at 998; *CrossFit, Inc. v. Nat'l Strength and Conditioning Assoc.*, 2019 WL 6527951, at *8-9 (S.D. Cal. Dec. 4, 2019) (finding that spoliating party's failure to issue a written litigation hold until after litigation began constituted a failure to take reasonable steps to preserve ESI). Plaintiffs and their counsel also do not dispute that they did not learn the infrastructure of Plaintiffs' ESI systems nor the proper methodology for preserving and searching for ESI, failed to ensure documents were not being destroyed, and could not answer "simple question[s] about the ESI search methodology used." *HM Elecs.*, 2015 WL 4714908, at *22; *supra* ¶ 14.

37.     Plaintiffs destroyed relevant data, including demolishing servers and failing to disable automatic deletion functions on their principle's email account even after this action was filed. *Supra* ¶¶ 8-10; *see also WeRide*, 2020 WL 1967209, at *12 (finding spoliating party "did not take reasonable steps to preserve the ESI" where it did not deactivate an email auto-deletion function).

38.     The evidence destroyed by Plaintiffs was relevant. Courts often presume relevance where, as here, the spoliating party failed to ever issue a litigation hold. *See, e.g., Blumenthal Distrib.,* 2016 WL 6609208, at *16-17 (finding that "it is reasonable

to conclude" that the failure to issue a litigation hold resulted in the destruction of relevant emails and is, by itself, "at a minimum" and act of "gross negligence"); *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("[B]ecause 'the relevance of destroyed documents cannot be clearly ascertained because the documents no longer exist,' a party 'can hardly assert any presumption of irrelevance as to the destroyed documents.'") (citation and formatting omitted).

39.    Boeing also has presented compelling evidence regarding the relevance of Plaintiffs' destroyed evidence, including that: (i) any financing attempt was contingent upon Mrs. Weintraub's finances (*supra* ¶ 6(b)) (ii) the former Chief Financial Officers Peter Koenig and Mark Slomann were involved in efforts to obtain financing of the Property (*supra* ¶¶ 6(c)-(d)) (iii) Mr. Weintraub claims that Plaintiffs were attempting to finance their purchase of the Property (*supra* ¶ 5 (citing Ex. B, Dkt. 85-1 at 34:8-24)) and (iv) Plaintiffs assert that their inability to obtain financing is relevant to their claim (*supra* ¶ 5 (citing Pl. Opp'n to Def. Rule 11 Motion, Dkt. 74 at 14)). Yet, Plaintiffs made no effort to preserve materials from any of the aforementioned witnesses and demolished the server hosting Mrs. Weintraub's primary email from the relevant time period (2012 and 2013). *See supra* ¶¶ 8-12.

**C.    The Evidence Plaintiffs Destroyed Cannot Be Restored or Replaced.**

40.    Under the Rule 37(e) analysis only, courts also consider whether the lost evidence can be restored or replaced. *WeRide Corp.*, 2020 WL 1967209, at *9. Many courts skip this step altogether or automatically find it satisfied where, as here, the spoliating party failed to issue a litigation hold or take other rudimentary preservation steps. *See Perez*, 2014 WL 12591809, at *3-4; *HM Elecs.*, 2015 WL 4714908, at *22.

41.    Given that Plaintiffs never preserved—and in fact lost—ESI, replacement and recovery is apparently impossible. *See supra* ¶¶ 8-10; *CrossFit Inc.*, 2019 WL 6527951, at *6 (concluding that it was "evident" that the lost evidence was irreplaceable because the spoliating party did not dispute that relevant information was destroyed). For example, Mrs. Weintraub testified that her relevant email account was

15

hosted on a now demolished server and could not be recovered. *Supra* ¶ 10. Mr. Weintraub indicated he has employed email auto-deletion *to date*. *Supra* ¶ 9. Former employees' computers were "thrown out" (*supra* ¶ 12) and their email evidently not preserved, given that, for example, emails from Plaintiffs' CFOs are missing (*supra* ¶¶ 11-12, 18).

42.     There is no way to cure this failure with additional discovery, and the production of other documents does not show that the destroyed documents can be replaced or recovered. *CrossFit Inc.,* 2019 WL 6527951, at \*7 (data cannot be replaced when data storage device was destroyed); *In re Napster*, 462 F. Supp. 2d at 1070 (finding the failure to suspend automatic deletion of emails was alone sufficient to require the imposition of sanctions).

### D.    Plaintiffs Intended to Destroy Evidence

43.     Where the spoliating party never took rudimentary preservation steps, such as issuing a litigation hold, suspending automatic deletion functions, and speaking to relevant custodians about preserving their documents, courts routinely find that the party's destruction of files "was willful and in conscious disregard of their duty to preserve [] documents." *Jackson Family Wines, Inc. v. Diageo North America, Inc.*, 2014 WL 595912, at \*5 (N.D. Cal. Feb. 14, 2014); *Apple II*, 888 F. Supp. 2d at 998 (spoliating party was in "conscious disregard of its duty to preserve" by not issuing a litigation hold); *HM Elecs.*, 2015 WL 4714908, at \*23 (finding spoliation intentional where no litigation hold was in place, destruction occurred, and spoliating party could not prove destroyed materials were duplicates); *Io Grp. Inc. v. GLBT Ltd.*, 2011 WL 4974337, at \*7-8 (N.D. Cal. Oct. 19, 2011) (failing to suspend automatic deletion functions until over a year after the lawsuit was filed amounted to willful spoliation); *CrossFit, Inc.*, 2019 WL 6527951, at \*11 (awarding sanctions and finding intent where spoliating party waited four years to implement a litigation hold and withheld responsive documents).

44.     Courts particularly take issue with spoliating parties who seek to falsely

16

reassure the Court or the opposing party about their search and preservation efforts. *Id.* (finding "severe sanctions" were warranted where spoliating counsel "assur[ed] the court and opposing counsel that an ESI search had occurred" but "could not answer simple questions about the ESI search methodology" and then "disavowed any involvement").

45.     Plaintiffs' spoliation was in "conscious disregard of its duty to preserve" because (i) Plaintiffs never issued a litigation hold, including after they filed this action; (ii) Plaintiffs' principals destroyed evidence by demolishing a server and failing to suspend automatic deletion functions; and (iii) Plaintiffs misrepresented and continue to deflect and deny their spoliation despite the overwhelming evidence to the contrary. *Apple II*, 888 F. Supp. 2d at 998.

**E.     Boeing Is Prejudiced by Plaintiffs' Spoliation.**

46.     The Court need only find intent **or** prejudice to award sanctions to Boeing under its inherent authority and/or Rule 37(e). *Porter v. City and Cnty. of San Francisco*, 2018 WL 4215602, at \*3 (N.D. Cal. Sept. 5, 2018); *Perez*, 2014 WL 12591809, at \*9. Nevertheless, both intent and prejudice exist here.

47.     Plaintiffs concede that once the Court finds that Plaintiffs spoliated evidence, it is their burden to prove that the lost information does not prejudice Boeing. Opp'n at 14. Plaintiffs offer no such evidence. This deficiency alone is sufficient for the Court to find that Plaintiffs failed to meet their burden and Boeing is prejudiced. *See Apple II*, 888 F. Supp. 2d at 994.

48.     Further, the prejudice to Boeing is evident because Plaintiffs' spoliation materially impacts Boeing's ability to defend against Plaintiffs' claim. *Leon*, 464 F.3d at 959 (prejudice found where the refusal to produce or destruction of evidence would force the moving party to rely on incompetent evidence at trial or interfere with decision-making in the case). For instance, though not pled, Plaintiffs appear poised to argue that Boeing interfered with Plaintiffs' ability to secure financing because it refused to commit to remediate the Property until Butler and Weintraub contributed

$5,000,000 to an environmental escrow account is relevant to at least their damages claim. *Supra* ¶ 5. Testimony, as well as the limited documentary evidence Boeing has received, confirms (i) any financing was contingent upon Mrs. Weintraub's finances (*supra* ¶ 6(b)), and (ii) the former CFOs Mark Slomann and Peter Koenig would have been involved in communications with lenders on behalf of Plaintiffs to secure financing for the transaction (*supra* ¶¶ 6(c)-(d)). Documents and communications involving Mrs. Weintraub, Mr. Slomann, and Mr. Koenig are thus crucial to evaluating what happened with Plaintiffs' efforts to obtain financing and whether concerns about a commitment from Boeing regarding remediation actually inhibited Plaintiffs' ability to secure financing. Yet Mr. Koenig and Mr. Slomann collectively appear in only approximately sixteen emails produced by Plaintiffs and each of these comes from threads that appear to have been pulled from other employees' files. *Supra* ¶ 18. Mrs. Weintraub's email address similarly appears in only a handful of emails, none of which was pulled from her custodial file. *Id.*

49.    Plaintiffs never made efforts to preserve, and in fact destroyed, Mrs. Weintraub's, Mr. Koenig's, and Mr. Slomann's emails and other hard copy records. *Supra* ¶¶ 8, 10, 11, 18. Without these documents, Boeing's ability to prepare a meaningful defense to Plaintiffs' funding theory is significantly hampered. *Leon*, 464 F.3d at 959 (reiterating the Ninth Circuit's finding of "prejudice when a party's refusal to provide certain documents 'forced [the moving party] to rely on incomplete and spotty evidence'") (citation omitted).

50.    Finally, Plaintiffs' witnesses' more than eight-year old recollections are no substitute for contemporaneous documentary evidence. *Al Otro Lado*, 2021 WL 631789, at *6-7 (granting sanctions for spoliation because contemporaneous evidence was not replaceable); *see also supra* ¶ 19. Mr. Weintraub also reversed course from prior sworn statements submitted to the state court. *Supra* ¶ 20. Without complete documents, there is no way for Boeing, the Court, or any jury to test Plaintiffs' theories and determine the truth. Boeing is significantly prejudiced by Plaintiffs' spoliation.

*Leon*, 464 F.3d at 959.

## IV.    THE COURT GRANTS BOEING'S REQUESTED EVIDENTIARY AND MONETARY SANCTIONS

### A.    Plaintiffs' Spoliation Warrants Issue Preclusion Sanctions And an Adverse Inference

51.    Courts routinely find issue preclusion and adverse inference sanctions appropriate where a party fails to issue a litigation hold and there is spoliation. *See HM Elecs.*, 2015 WL 4714908, at *32; *Small v. Univ. Med. Ctr.*, 2018 WL 3795238, at *57-70 (D. Nev. Aug. 9, 2018) (imposing adverse inference and monetary sanctions where spoliating party failed to implement a timely litigation hold and conduct reasonable inquiry). As detailed above, Plaintiffs appear poised to argue that Boeing disrupted Plaintiffs' ability to secure financing. *Supra* ¶ 5. In spite of this, Plaintiffs appear to have destroyed or lost substantial documents relevant to their alleged efforts to finance the transaction (to the extent they made such efforts), thus leaving Boeing unable to meaningfully test whether concerns about a commitment from Boeing regarding remediation actually prevented Plaintiffs from securing financing. *Supra* ¶¶ 8-12, 17-20. Accordingly, issue preclusion sanctions barring Plaintiffs from arguing or presenting evidence that Boeing interfered with their ability to secure financing are appropriate. *See, e.g.*, *In re Napster*, 462 F. Supp. 2d at 1077-78 (awarding issue preclusion sanctions, an adverse inference instruction, and reasonable attorneys' fees under the court's inherent authority to sanction the spoliating party for the wrongful destruction of evidence).

52.    In addition, because both of Plaintiffs' principals destroyed unknown volumes of evidence and Plaintiffs failed to implement a litigation hold, should this case get to trial, Boeing is entitled to an adverse inference in the form of a jury instruction. *See* Fed. R. Civ. P. 51(a)(1); *Blumenthal Distrib.*, 2016 WL 6609208, at *25 (imposing an adverse inference where spoliating party did not implement a litigation hold and failed to conduct a reasonable search); *Apple I*, 881 F. Supp. 2d at 1151 (adverse instruction imposed under the Court's inherent authority); *Apple II*, 888

19

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: THE BOEING COMPANY'S MOTION FOR EVIDENTIARY AND MONETARY SANCTIONS [DKT. 85]

F. Supp. 2d at 999-1000 (imposing an adverse inference instruction under Rule 51(a)(1)).

### B. Plaintiffs' Spoliation Warrants Monetary Sanctions

53.    Boeing also seeks the costs and fees it incurred in in uncovering and developing the record on Plaintiffs' spoliation. Boeing's Motion for Evidentiary and Monetary Sanctions, Dkt. 85 at 22-23. Courts have ample authority to issue substantial monetary sanctions against litigants and their counsel to reasonably compensate a party for the prejudice caused by misconduct in circumstances such as this. *See, e.g., In re Napster*, 462 F. Supp. 2d at 1078 (finding "[m]onetary sanctions may be imposed where one party has wrongfully destroyed evidence" and awarding fees). Plaintiffs' spoliation and their refusal to concede their spoliation warrants monetary sanctions in the amount of an award for its expenses incurred uncovering and developing the record reflected in this motion (including its time meeting and conferring regarding the spoliation issues and taking discovery on the spoliation issues), as well as the costs and fees for this Motion. Boeing's Mot. for Evidentiary and Monetary Sanctions, Dkt. 85 at 22-23. Plaintiffs do not oppose Boeing's request for monetary sanctions. *See generally* Pl. Opp'n to Mot. for Evidentiary and Monetary Sanctions, Dkt. 93.

## V.    BOEING'S MOTION IS TIMELY

54.    Plaintiffs' argument that Boeing's Motion is untimely is without merit because (i) a motion for evidentiary and monetary sanctions for spoliation does ***not*** have to be brought as a discovery motion; and (ii) Boeing did not unreasonably delay filing its Motion. *Perez*, 2014 WL 12591809, at *8 (a spoliation motion seeking evidentiary sanctions "is not a discovery dispute"); *Oracle America, Inc. v. Hewlett Packard Enterprise Company*, 328 F.R.D. 543, 548 (N.D. Cal. 2018) (finding a spoliation motion was timely where the moving party first raised the prospect of the motion nearly a year before it was filed, had the information needed to file approximately two months before, but delayed filing because the moving party was trying to resolve the matter without Court intervention); *Montoya v. Orange Cnty.*

*Sheriff's Dept.*, 2013 WL 6705992, at *5 (C.D. Cal. Dec. 18, 2013) (spoliation motion filed after the discovery cutoff was timely because motion sought dispositive sanctions for "litigation misconduct").

55.    First, Plaintiffs do not have any authority to support their argument that the 2015 Amendment of Rule 37 requires spoliation motions brought under Rule 37(e) to be discovery motions brought on a discovery motion timeline. Pl. Opp'n to Def. Motion for Evidentiary and Monetary Sanctions, Dkt. 93 at 6-7. This argument runs contrary to the weight of authority and overlooks the fact that Boeing's Motion is also based on Rule 51(a)(1)—a squarely evidentiary Rule—and the Court's inherent authority. Many other courts have found that a sanctions motion for spoliation of evidence—including ESI—does not have to be brought as a discovery motion where, as here, it seeks only evidentiary and/or monetary sanctions. *See, e.g., Perez*, 2014 WL 12591809, at *8 (a spoliation motion seeking evidentiary sanctions "is not a discovery dispute"); *Compass Bank v. Morris Cerullo World Evangelism*, 2015 WL 3442101, at *7-8 (S.D. Cal. May 27, 2015) (finding timely a spoliation motion filed after the discovery deadline because it "did not ask for the Court's assistance in resolving any lingering discovery disputes" and instead "sought only terminating or evidentiary sanctions against Plaintiff for spoliation of evidence"); *Montoya v. Orange Cnty. Sheriff's Dept.*, 2013 WL 6705992, at *5 (C.D. Cal. Dec. 18, 2013) (spoliation motion filed after the discovery cutoff was timely because motion sought dispositive sanctions for "litigation misconduct"); *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 2015 WL 4077732 at *2 (S.D. Cal. July 6, 2015) ("A spoliation motion doesn't need to be filed before the close of discovery.") (citing *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 506 (D. Md. 2009)). Boeing's Motion does not seek to compel discovery or enforce a discovery order. It is an evidentiary motion for spoliation, and, as such, it is not a discovery dispute that must be filed before the close of discovery.

56.    Second, Boeing did not unreasonably delay filing its Motion by raising spoliation concerns in December 2021 but waiting to file its motion until June 6, 2022

21

(Boeing's Motion for Evidentiary Sanctions, Dkt. 80) because discovery regarding spoliation was ongoing and the parties' meet and confer efforts to resolve the dispute were ongoing. When Boeing raised concerns about Plaintiffs' spoliation in December 2021, Plaintiffs "vehemently" opposed the contention and insisted that further discovery would show there was no spoliation. *Supra* ¶ 21. Boeing completed these depositions on February 18, 2022. *Id*. Plaintiffs continued to request more time to investigate Boeing's claims. *Id*. The parties then engaged in a meet and confer process during which Plaintiffs repeatedly informed Boeing that a stipulated resolution could be reached—which Plaintiffs likewise told the Court on May 5, 2022. *Supra* ¶ 22. When Plaintiffs did not agree to the stipulation within a month of informing the Court and Boeing that they anticipated that a stipulation could be reached, Boeing filed its Motion. *Id*. This record does not support accusations of unreasonable delay.

IT IS SO ORDERED.

DATED: _____

_____
Hon. Gail J. Standish
UNITED STATES MAGISTRATE JUDGE

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: THE BOEING COMPANY'S MOTION FOR EVIDENTIARY AND MONETARY SANCTIONS [DKT. 85]